**Jimmy D. GANDY and Albert J. Berry, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 23980.**

United States Court of Appeals
Fifth Circuit.

Dec. 11, 1967.

Rehearing Denied Jan. 17, 1968.

Jos. P. Manners, Richard M. Gale, Miami, Fla., for appellants.

Theodore Klein, Asst. U. S. Atty., Miami, Fla., William A. Meadows, Jr., U. S. Atty., Aaron A. Foosaner, First Asst. U. S. Atty., Miami, Fla., for appellee.

Before BROWN, Chief Judge, and COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

This prosecution involved eleven stolen motor vehicles which were shipped from Miami to San Juan, Puerto Rico. The indictment was in twenty-three counts, the first count charged a conspircay [18 U.S.C.A. § 371] to transport stolen motor vehicles in interstate commerce knowing them to have been stolen, in violation of Title 18 U.S.C.A. § 2312. The remaining twenty-two counts charged substantive violations of the statute. Appellants were convicted on all twenty-three counts. Berry was sentenced to three months imprisonment and fined $1,000 as to Count 1 and placed on three years probation. Gandy was given concurrent sentences of two years imprisonment on each of the counts. We affirm.

### First Specification of Error

An accomplice, not indicted, but named as a co-conspirator, testified for the Government. He was thoroughly cross examined by defense counsel as to any offers of leniency or reward in return for his testimony. At one point, he testified categorically, "I wasn't promised anything or any deals". Anticipating the argument of defense counsel that this testifying co-conspirator had specifically been given a reason to hope for or to expect some form of reward or leniency in return for his testimony, the prosecutor in his opening argument said, "I cannot tell you sincerely enough that that is absolutely false and that there is no basis in fact at all in the trial except [defense counsel's] own attempt to infer that * * *"

It is here argued that this statement by the prosecutor necessitates a reversal under the teachings of Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, and United States v. Marchese, 9 Cir., 1965, 341 F.2d 782.

The answer to this is that in *Napue* the witness falsely testified that he had received no promise or consideration in return for his testimony, whereas the prosecution had made such a promise and did nothing to correct the false testimony to the contrary.

In *Marchese,* a post conviction habeas corpus proceeding, there was an allegation that there had been an improper agreement between the prosecuting attorney and the principal witness, not fully revealed.

In our opinion the principles involved in *Napue* and *Marchese* have no application here for there is absolutely no proof of any such promises or agreements in this record. It can be argued, as it was argued to the jury below in an attack upon the co-conspirator's creditability, that the sentence he received in the state courts might imply such an arrangement, at least with state officials. Even so, there is no testimony to contradict the positive statement that there was absolutely no promises or deals.

Moreover, before argument began the trial court expressly directed the attention of the jury "to the fact that what the lawyers have to say is not evidence and is not to be received by you as evi-

dence". Certainly, lawyers in their jury arguments are never to make representations of fact on their own responsibility. They are advocates and not witnesses. At the same time, the language used here cannot clearly be said to constitute an individual representation but was merely an argument alluding to what the witness had said, that he had been promised nothing. And if this is not the case, certainly any possible prejudice to the defendants was clearly obviated by the positive preargument instruction of the court that what the lawyers have to say is not evidence and is not to be considered by the jury as evidence. Reversible error is not to be predicated on this occurrence.

### Second Specification of Error

The appellant Berry took the stand in his own defense. He testified that the automobiles in question had been offered to him "as repossessed cars from the finance company in the State of Alabama", that he never knew the cars were stolen, and that he treated them as legitimate products. On cross examination, he testified that he had no business dealings with co-defendant Gandy but he had one time sold him an air conditioner. He did, however, admit that the man from whom he allegedly bought the automobiles, by the name of Mackey, was introduced to him by Gandy. He admitted that he shipped the automobiles to Puerto Rico. He said that he paid cash for them and further conceded that the only records he had *with him* to show that he paid for the cars were bills of sale. He admitted that he had not issued any check in payment for any of the eleven cars in question.

He was asked:

Q. Now, what records do you have, business records, indicating the sale and purchase of these cars?

A. All my records are in [counsel's] hands.

Q. Does [counsel] have them?

A. Yes, sir.

Q. May I see them?

COUNSEL. No, you didn't show me any records. You did not show me your work product. It is unfair.

PROSECUTOR. These are not work products. These are his records, the defendant's records.

THE COURT. Sustained.

PROSECUTOR (Addressing Berry).

Q. Are you willing to show me the books and records showing the notations of the sales of these cars and the purchases?

A. If my attorney says so.

BY COUNSEL. I say no. If your Honor please, I would like the jury admonished as to the law here or the principle involved.

THE COURT:

"Gentlemen of the jury, you are not to draw any inference, any unfavorable inference from this. The defendants are not required to produce records unless they desire to do so, and you are not to draw an unfavorable inference from his lawyer's refusal to produce the record".

During his closing argument the prosecutor argued that if Mr. Berry had hard, cold documentary evidence in the form of ledgers or journals showing these transactions to support his testimony he would have shown them to the jury, hence it was plain and simple that there are no such documents.

Upon objection by defense counsel the Court responded, "I have ruled on this, and I ruled on it yesterday, and the ruling yesterday was, and shall remain the same, that [the prosecutor] could not benefit by calling upon the defendants' counsel for the production of records * * * [A]nd there the matter rests".

We find no error in this episode.

■ The situation is governed by the principles stated in Carpenter v. United States, 4 Cir., 1959, 264 F.2d 565:

"Firmly rooted in our judicial history is the principle that a defendant in a criminal case, who cannot be compelled to testify and whose failure to do so may not be made the subject of

adverse comment, cannot prescribe and impose limitations upon his waiver of his privilege against self-incrimination when he voluntarily takes the witness stand. When he chooses to testify freely to those events and circumstances which tend to support his defense, neither the Constitution nor any consideration of justice requires that he be permitted selectively to suppress other relevant facts which may be incriminating or inconsistent with his defense. '(H)e has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts.' Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 949, 44 L.Ed. 1078, 1083. 'When he took the witness stand in his own behalf he voluntarily relinquished his privilege of silence, and ought not to be heard to speak alone of those things deemed to be for his interest, and be silent where he or his counsel regarded it for his interest to remain so, without the fair inference which would naturally spring from his speaking only of those things which would exculpate him and refraining to speak upon matters within his knowledge which might incriminate him.' Caminett v. United States, 242 U.S. 470, 494, 37 S.Ct. 192, 198, 61 L.Ed. 442, 456."

█ In Johnson v. United States, 1943, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, rehearing den. 318 U.S. 801, 62 S.Ct. 826, 87 L.Ed. 1164, it was held that the voluntary offer of an accused to testify on any fact waives the right to assert the privilege against self-incrimination and to refrain from testifying as to such fact and others fairly related reasonably thereto. See also Claunch v. United States, 5 Cir., 1946, 155 F.2d 261.

█ The prosecutor was entitled to ask the witness about his records and his willingness to produce them. We do not pass upon the question of requiring the attorney to produce records in his possession because the trial court flatly declined to require it and very emphatically instructed the jury to ignore that item.

The appellant certainly got the benefit of that "merciful discretion" alluded to by Mr. Justice Frankfurter in his concurring opinion in *Johnson,* supra.

## Third Specification of Error

Berry called six character witnesses. On cross examination the prosecutor questioned each of them in substantially the following form:

Mr. . . . . . . . . . ., do you *know* [emphasis supplied] that sometime in 1960 Mr. Berry made an application to become a citizen of the United States of America?

\*    \*    \*    \*    \*    \*

Q. Did you *know* [emphasis supplied] that Mr. Berry withdrew his application for citizenship?

There were eight character witnesses, including an attorney, a certified public accountant, a general contractor, an insurance agent, and other business men. Only one or two of them knew [or had heard] of Berry's application *and none knew of its withdrawal.* There is no question, however, that there had been such a withdrawal.

The appellant argues that it was improper to ask the witnesses whether they *knew* of such an event but that the proper form of the question should have been whether or not they had *heard,* citing Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). *Michelson* did so hold. The Government concedes that the questions were not in the proper form, but argues that under all the facts and circumstances of the case this was not so prejudicial as to justify reversal. Appellant further argues that in any event this was not a proper subject for cross examination.

█ As stated in *Michelson,* when the defendant put his general reputation in issue he threw open the entire subject. The question propounded by the prosecutor was permissible, except that the witnesses should have been asked if they had *heard* of the withdrawal, not if they *knew* of it. Michelson clearly holds, however, that "rarely and only on clear showing of prejudicial abuse of discretion

will Courts of Appeals disturb rulings of trial courts on this subject". As taught in *Michelson,* the District Judge held a hearing outside the presence of the jury [Roberson v. United States, 5 Cir., 1956, 237 F.2d 536] to determine that there was a factual basis for the inquiry. We do not think that the awkward use of the word "Know" instead of the word "hear" could have possibly resulted in any prejudice to this appellant. It may well have been to his advantage. It is not unlikely that the witnesses could have heard of the withdrawal *but did not know it.* The defendant thus got the benefit of that distinction. The jury was left with no proof that the application withdrawal was really a fact. Interestingly enough, neither the trial judge nor any of counsel referred to this citizenship item in the instructions or argument to the jury. Prosecutors, however, would be well advised to carefully acquaint themselves with the opinion in *Michelson,* clearly a masterpiece in the field, and particularly that language, "[T]he form of the inquiry, 'Have you heard?' has general approval, and 'Do you know?' is not allowed".

Affirmed.