**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Richard HAMILTON, also known as Richard Woods, Defendant-Appellant.**

**No. 16670.**

United States Court of Appeals Seventh Circuit.

March 27, 1969.

Robert S. Bailey, LeFevour & Bailey, Oak Park, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., Michael B. Nash, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee, John Peter Lulinski, Asst. U. S. Atty., of counsel.

Before KNOCH, Senior Circuit Judge, and KILEY and CUMMINGS, Circuit Judges.

KNOCH, Senior Circuit Judge.

The defendant-appellant, Richard Hamilton, seeks to have his conviction after trial by jury on charges of narcotics violations under Title 26 U.S.C. § 4705(a) and Title 21 U.S.C. § 174, set aside and a new trial ordered on two grounds: (1) his conviction was based in part on evidence of his statements taken in alleged violation of Rule 5(a), Federal Rules of Criminal Procedure, providing for prompt arraignment before a committing magistrate;* and (2) the prosecutor prejudicially injected his own opinion in argument allegedly hinting at possession of information beyond that adduced in evidence at the trial.

The defendant was charged in three counts, two concerning an alleged illegal sale of narcotics to federal narcotic agent Carroll R. Gibson on December 16, 1965, and a third relating to a package of heroin in defendant's possession on June 2, 1966, which was alleged to be knowingly received, etc. after known importation contrary to law, in violation of Title 21 U.S.C. § 174. After a verdict of guilty had been brought in, defendant was sentenced to serve seven years' imprisonment.

There were sharp conflicts in the testimony. Agent Gibson testified that on December 16, 1965, he and a known informant, Henry Mobley, were joined by defendant at Mobley's apartment where defendant agreed to sell heroin, left the apartment, and returned to complete the sale. Agent Allen R. Pringle testified to seeing Agents Gibson and Henry Mobley enter the building, and the subsequent entrance of the defendant, who left and later returned for a few minutes and again departed. Agent Charles E. Hill also testified to his surveillance of the building on December 16, 1965.

Defendant testified that having visited another apartment in the building, he was invited into Mobley's apartment where he refused to discuss narcotics but was asked by Mobley to return and pick up some packages. When Mobley was brought to the trial from the State Penitentiary by writ of habeas corpus ad testificandum on motion of the defendant, Mobley refused to testify, relying on his privilege against self-incrimination.

Agents Hill and William C. Kerstann testified that on June 2, 1966, while they were in an automobile with the informant Mobley, they saw the defendant engaged in conversation with a Chicago Police Officer. They watched him walk to an automobile, throw a package on the street, and then drive away.

Agent Hill retrieved this package, an aluminum foil packet containing white powder which showed a positive reaction (indicating the presence of a derivative of opium) on being field-tested later. The agents pursued and arrested the defendant. A search of his person and his automobile revealed no narcotics.

---

* Rule 5. Proceedings before the Commissioner

(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

Defendant testified that he had no narcotics at all on June 2, 1966. George Teague testified for defendant that he, defendant and George Mobley were together at Teague's home where Mobley used a narcotic hypodermic belonging to Teague and then left by the back window when Teague saw and gave warning that Chicago Police Officer Henry Pates, whom he knew, was coming toward the apartment. He said that the fendant then went toward the front door and engaged in conversation with Officer Pates. He later saw the agents arrest defendant. He stated that it was Mobley and not the defendant who had narcotics. Defendant testified to the same effect.

The defendant was arrested about 3:00 P.M. on the south side of Chicago and brought to the Bureau of Narcotics about 3:30 P.M. where Agent Hill telephoned U. S. Commissioner Pike, although the defendant had not yet been photographed or fingerprinted, and was told that the defendant could be handled if he were brought up before 4:00 P.M. At approximately 4:00 P.M. Agent Hill called again but was told to take the defendant to the Chicago Police Department and have him appear before the Commissioner the following day. The defendant was lodged for the night with the Chicago Police Department at 4:15 P.M. and appeared before the Commissioner the following morning. Nobody interrogated him during that period.

Agent Kerstann testified to advising the defendant of his Constitutional rights at the time of arrest and again on arrival at the Bureau. While at the Bureau during the processing there, the defendant inculpated himself as to the December 16, 1965 incident but denied all knowledge of the June 2, 1966 incident.

Defendant contends that the inculpatory statement should have been excluded on authority of Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. Mallory was detained more than four and one-half hours during which arraignment could have been made and then examined for another one and one-half hours by a "lie-detector" operator. Unlike the defendant here, Mallory was not advised of his right to counsel and of his right to keep silent or warned that any statement he made could be used against him in a court of law. Here a time lapse of about one hour and fifteen minutes occurred between defendant's arrest and his delivery to the Chicago Police Department for the night, during which time he was in the Bureau premises about half an hour.

■ As Judge Hastings, then Chief Judge of this Court, stated in United States v. Taylor, 1967, 374 F.2d 753, 757,

The problem of delay is to be solved by determining whether the delay which occurred was in fact unnecessary when the sum total of the circumstances shown is considered. See Muschette v. United States, 116 U.S. App.D.C. 239, 322 F.2d 989, 991 (1963), vacated and remanded on other grounds, 378 U.S. 569, 84 S.Ct. 1927, 12 L.Ed.2d 1039 (1964).

■ We cannot agree with defendant that the facts here provide any reasonable basis for an inference that a delay was deliberately induced for the express purpose of producing evidence.

In his opening argument to the jury, the prosecutor said of George Teague,

"In my estimation, he committed perjury."

and

"I think that Mr. Hamilton told us a lie * * *"

He expressed the view that when the jurors retired to decide this case, he thought they would realize it involved "almost solely a question of credibility." He went on to say before interrupted by objection, that if the agents had decided to "frame" the defendant, "my knowledge of them makes me want to give them credit for a little bit more imagination and for a little bit more certainty * * *."

Counsel for defendant objected to the prosecutor's "knowledge of anything"

but was overruled. The prosecutor after stating that the jury would make its own evaluation of Mr. Teague, said further that he looked to the prosecutor like a good subject for suggestion though he didn't know from where such suggestion came.

Counsel for the defense argues that the prosecution improperly reduced the defense theory of mistake to a question of "who was lying."

The defense theory is based on the evidence of George Teague that the informant who refused to testify (and not the defendant) was in possession of heroin at Teague's home just prior to the arrest, that the informant departed by way of a window as defendant went out the door with a policeman. The agents, the defendant reminds us, saw the defendant on the sidewalk engaged in conversation with a policeman, which supports Teague's evidence. Defendant contends that it is thus likely that the narcotic package found on the sidewalk came from the informant. His theory is that the agents were innocently duped by the informant.

However, Agents Kerstann and Hill testified to seeing the defendant throw away the package, later recovered and found to contain narcotics. They also stated that the informant was in an automobile with them when they saw the defendant on the street in the company of a police officer.

If the jury were to believe that Teague was correct in stating that the informant alone had narcotics and that the informant was in his home at the very time when the agents said the informant was with them, and that defendant was truthful in stating that he threw no package at the time when the agents said they saw him do so, the jury must have concluded that the agents were untruthful and had conspired to incriminate an innocent person. An issue of credibility was clearly presented in connection with each of these two incidents on December 16, 1965 and June 2, 1966.

This Court deprecates the use of the personal pronoun and the assertion of the prosecutor's own beliefs. Yet there was evidence from which the opinions stated could be reasonably drawn and it was not error to invite the attention of the jurors to that fact. See United States v. DeAlesandro, 2 Cir., 1966, 361 F.2d 694, 697, cert. den. 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74. This was a short trial. The evidence was all fresh in the minds of the jurors. The prosecutor began his remarks on the case with the question "Now what does the evidence show in this case?" and continued, "What did I tell you at the beginning in my opening statement, that it would show and what did it show? I would like you to keep each of those in mind."

It is unlikely in the extreme that in this context the jurors could possibly have been misled into believing that the prosecutor was hinting at private knowledge beyond the evidence adduced in Court when he expressed his disbelief that had the agents wished to "frame" this defendant they would have gone about their nefarious business with such lack of imagination.

This was quite different from the situation in Gradsky v. United States, 5 Cir., 1967, 373 F.2d 706, 710, cited by the defendant, where the prosecutor told the jury that government representatives didn't put a witness on the stand unless he appeared to be a truthful witness, that the government had every opportunity to check out the credibility and truthfulness of the two co-conspirator witnesses for the government and in that context their testimony was offered. See also Gandy v. United States, 5 Cir., 1967, 386 F.2d 516, 517, cited by defendant. There a government witness on cross-examination specifically denied that he was promised any leniency or reward. In anticipation of a defense argument that some reason existed for this witness to hope for reward the prosecutor said in his opening statement, "I cannot tell you sincerely enough that * * * there is no basis

in fact * * * to infer that * * *." The Court in *Gandy* decided that this was not a representation but merely an argument. The judgment was affirmed.

We have carefully considered the cases to which our attention has been invited by the defendant but find them all easily distinguished. For example, in Greenberg v. United States, 1 Cir., 1960, 280 F.2d 472, 474, the prosecutor made an impassioned plea on the subject of the Second World War, its crucial importance and the sacrifices it entailed—all completely unrelated to the issues of the alleged falsification of an income tax return.

In United States v. Dichiarinte, 7 Cir., 1967, 385 F.2d 333, 340, the defense pointed out the difficulties under which the agents made their observations and argued in substance that they had seen two other men. None of the agents had seen Dichiarinte before. Later they looked at photographs and several identified a picture of Dichiarinte as the man they had seen at the wheel of an automobile for very short periods of time. The second man involved was seen at a considerable distance at night and his identity was apparently not established for six weeks. The conviction was reversed not only because the prosecutor ignored this theory by his comments that "somewhere there is perjury," but because the jurors might have interpreted remarks by the Court as agreeing with the prosecutor that the issue was whether the agents or the defense witnesses were lying.

In United States v. Murphy, 2 Cir., 1967, 374 F.2d 651, 655, the Court found insufficient ground to warrant a new trial but expressed the opinion that the prosecutor should have shown greater care. He commented on the immunity granted government witnesses. His remarks lacked complete clarity but the Court interpreted these remarks as relating to crimes committed by the witnesses and not crimes committed by the defendants; that he was arguing in effect that it was unlikely these witnesses would have sought immunity if they had not committed the crimes and unlikely they would risk a charge of perjury by testifying to commission of crimes that never occurred, and hence the jury should believe these witnesses.

We conclude that the prosecutor's remarks in the case before us were, at worst, harmless error.

The judgment of the District Court is affirmed.

Affirmed.