UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas W. FRANKLIN,
Defendant-Appellant.

No. 72–2141.

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Melvin E. Thompson, Jr., Atlanta, Ga. (Court-Appointed), for Henderson.

Charles D. Read, Jr., Decatur, Ga., for Franklin.

John W. Stokes, Jr., U. S. Atty., Robert L. Smith, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

**JOHN R. BROWN, Chief Judge:**

Thomas Franklin was convicted of possession of goods stolen from an interstate shipment, 18 U.S.C.A. § 659, knowing the merchandise to have been illegally taken.[1] On this appeal he raises the four questions whether the trial judge erred: (i) in his distribution of the peremptory challenges between the two co-defendants, (ii) in permitting the Government prosecutor in cross-examining Franklin's character witnesses to inquire whether they had heard of defendant's prior involvement in a similar crime some years earlier, (iii) in permitting the Government to make such inquiry on cross-examination of the defendant and (iv) in permitting direct proof of the commission of the earlier acts. While we do not agree with the first contention, we do find error as to the third and fourth, and reverse for a new trial.

### Peremptory Challenges

 Appellant Franklin claims error was committed when the trial court not only refused to grant additional peremptory challenges, but required defendants Franklin and Henderson to exercise their ten challenges separately—five for each. F.R.Crim.P. 24(b) gives the district court wide latitude in determining how the peremptory challenges shall be distributed. The rule plainly allows the trial court to specify whether the challenges are to be exercised separately or jointly. In United States v. Williams, 5 Cir., 1971, 447 F.2d 894, 896–897, we said:

> "The limitation of the five defendants to ten peremptory challenges and permitting them to be exercised separately or jointly is in direct compliance with F.R.Crim.P., Rule 24(b). Under that rule the court *may* (not must) allow additional peremptory challenges where there are multiple defendants."

With such discretion inherent in the rule, there is no basis for faulting the trial court here.

### Character Witnesses

The specific crime with which Franklin was charged was the possession of cartons of food products stolen from a trailer, which had itself been removed from a loading yard where it was parked overnight. Franklin, proprietor and manager of a grocery store in Atlanta, Georgia, purchased the food products under suspicious circumstances. Shortly thereafter, the goods were discovered by detectives on the shelves and in the basement of Franklin's supermarket. Franklin's defense to the charge was based on his contention that he had not an inkling that the goods were stolen and, contrary to the appearance of things, the circumstances of purchasing the goods off the back of a truck from unfamiliar vendors, on a Sunday morning, was not unusual in his business.

At the trial of Franklin and his illicit vendor, Henderson, counsel for Franklin called a number of character witnesses in his behalf. Each witness was asked whether he knew the defendant's reputation in the community. Treating this as the switch which turned the spotlight on Franklin's entire character, the government opened up a tri-faceted inquiry

---

[1]. Franklin's co-defendant, Doyle Ray Henderson, was similarly convicted. However, because he has escaped custody and remains at large, his appeal was stricken without prejudice.

into the defendant's alleged involvement with a truckload of stolen fluorescent lamps some five years earlier. The government thrice increased the intensity of this inquiry, like a three-way, 50–100–150 watt light bulb, until it may well have left a lasting mental image upon the minds of the jury.

### A 50-Watt Question

Franklin summoned a number of character witnesses in his behalf and each was asked about his knowledge of the defendant's reputation in the community. Favorable replies were received from each of these witnesses who included neighbors, business associates and even a policeman. On cross-examination the government asked the witnesses if they had heard of an incident wherein Franklin had been in possession of stolen light bulbs.[2]

The record finally revealed that Franklin had never been arrested, charged or convicted of having these stolen lamps in his possession in 1966. Thus, in no sense could the testimony elicited from the character witnesses prove that Franklin had previously been *convicted* of the crime of possessing stolen property.

Nevertheless, we think it is clear that the questions were permissible. In Michelson v. United States, 1948, 335 U. S. 469, 69 S.Ct. 213, 93 L.Ed. 168, the Supreme Court undertook a detailed inquiry into the problem of cross-examining character witnesses. In that case, a nearly identical "have you heard?" question was asked each such witness. The court observed that such questioning was one of the hazards of using character witnesses:

> [The] witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion. [The prosecution] may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate. Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.

335 U.S. at 479, 69 S.Ct. at 220, 93 L. Ed. at 175.

We have applied this rule in a number of cases. In Gandy v. United States, 5 Cir., 1967, 386 F.2d 516, we dealt with a question of whether the interrogatory "do you *know*?" was proper. In holding that it was not a legitimate question under the *Michelson* standard, we declared "that the witness-

---

2. The following is a sample of these exchanges:

 DIRECT EXAMINATION

 * * * * *

Q. All right, sir. Do you know—well, tell me how long you have known Mr. Franklin, here, please sir?

A. Approximately two and a half years.

Q. Do you know his reputation in the community in which he lives and which he does business?

A. I know of his business with our community and it has been excellent. We have extended considerable amount of credit which has been satisfactory.

Q. All right, sir. As far as his reputation and what you know of it, what would be your answer?

A. Excellent.

 * * * * *

 CROSS-EXAMINATION

 * * * * *

Q. Your reputation—your comments about his reputation—sir, were strictly with your business dealings with him, is that correct?

A. Yes, sir.

Q. Have you heard, sir, that Mr. Franklin back here had a truckload of light bulbs in his possession?

MR. READ: [counsel for Franklin] Your Honor, we object to that. We move for a mistrial. If your Honor wants to take it up out of the presence of the jury, this is the sort of thing we have had to contend with.

es should have been asked if they had *heard* of the withdrawal [of a citizenship application], not if they *knew* of it." 386 F.2d at 519. Wilcox v. United States, 5 Cir., 1967, 387 F.2d 60, presented a similar problem, and once again we affirmed the principle that *Michelson* does permit the "have you heard?" question if properly used. In Roberson v. United States, 5 Cir., 1956, 237 F.2d 536, we reversed the conviction because the government went beyond the permissible bounds of "have you heard?" Nevertheless, we acknowledged the legitimacy of the question. Thus, it is clear that asking character witnesses if they had heard of Franklin's involvement with the load of lamps was a low-wattage question, designed merely to illuminate the jury on how well the witnesses really knew Franklin's reputation and whether his *reputation* was as good as characterized in the conclusory "excellent."

### A 100-Watt Cross-Examination

 Had the prosecution been content with testing the knowledge of the character witnesses regarding Franklin's reputation, the appellant could have no cause for complaint. The district court, aware of the potentially damaging nature of the questions, instructed the jury on the extent to which the jury could consider this "have you heard?" testimony insofar as it related to the light bulb incident.[3] However, when the prosecutor cross-examined the defendant himself regarding the incident the Government overloaded the circuit, going far beyond the permissible standard. We need not set out here the precise exchange of question and answer regarding the lamps, since it is plain that the

prosecutor asked specific questions whether Franklin had done these acts, defense counsel objected, the court overruled and the defendant answered giving an exculpatory account of his involvement. In admitting the evidence the district court predicated it on the assurances of the government that it would offer proof of the incidents.

Since we hold, *infra*, that on this record the fact of asserted prior acts was not admissible, it is evident that this cross-examination was prejudicial to Franklin. Obviously, the questions cannot be framed in the "have you heard?" form since it is the defendant who is being cross-examined. This forced him to discuss an incident, a crime, for which he had never been arrested, charged or convicted. His discussion of his admitted possession of the stolen lamps placed him in an unfavorable light before the jury, perhaps casting dark shadows upon his character. In Wilcox v. United States, *supra*, a similar problem arose because of the prosecution's impermissible cross-examination of the defendant's character witnesses. Defense counsel felt obliged to counter the effects of the damaging questions.

With his proposed character evidence thus put in flames the defendant took the stand. In response to questions by his counsel he attempted to explain the "breaking and entering" case on the ground that he had only paid a fine for trespass. He attempted to explain his plea of guilty to grand larceny as being caused by a promise of probation, but the Court, on objection, directed the jury not consider that explanation. He "explained" the assault and battery as having been committed upon a man who had been playing

---

3. THE COURT: [addressing the jury]

\* \* \* \* \*

\* \* \* since the defendant, Thomas W. Franklin, tenders the issue of his reputation, the Government may ask that witness if he has heard of some incident in the defendant Thomas W. Franklin's career. Now, I wish for you to understand that regardless of the witness' answer to that question, you are not to assume that the incident asked about actually took

place. All that was happening at that time is that this witness' standard of opinion of the reputation of the defendant, Thomas W. Franklin, is being tested. Is that clear to everybody? Any question about it? Do you all understand it? By your silence, I can assume that there is no question.

There was no objection to this instruction.

with his wife. All this, of course, resulted in a sort of trial on the merits for multiple prior criminal offenses. It can only be likely that the jury considered these attempted explanations as confirmation rather than obliteration of this highly unfavorable turn of evidentiary events.

387 F.2d at 62–63.

The slender filament of prejudicial inference was thus ignited.

Our statements in United States v. Davenport, 5 Cir., 1971, 449 F.2d 696, have application here.

> The only type of evidence admissible to show defendant's character is proof of his reputation in the community [citations omitted]. Specific acts of misconduct cannot be shown [citations omitted]. If the defendant offers evidence of his reputation for good character, the government may rebut by evidence that his reputation is bad. Michelson v. United States, *supra*. This evidence, however, is limited to testimony concerning reputation only. *Proof of specific acts of misconduct is still not admissible.* Curtis Publishing Co. v. Butts, 5 Cir., 1965, 351 F.2d 702; United States v. Beno, 2 Cir., 1963, 324 F.2d 582; McCormick, Evidence § 158, at 337 (1954).
>
> \* \* \* \* \* \*
>
> Although there is some controversy on this point, in this Circuit a witness may not be impeached by inquiry about specific acts of misconduct not resulting in a conviction [citations omitted].
>
> \* \* \* \* \* \*
>
> The questions concerning the civil suit and the alleged insurance fraud were, therefore, improper. Such evidence could admittedly have no bearing on defendant's guilt and was inadmissible for impeachment purposes under this Circuit's rule.

(italics ours).

449 F.2d 699–700.

Of course *Davenport* does not rule out the *Michelson*-approved "have you heard?" questions, but it is clear that it forbids the inquiry made of the defendant himself in this case.

### A 150-Watt Rebuttal

■ Although it should be evident from the foregoing discussion that a new trial is required, it did not end there. For the prosecution—apparently as a part of its assurances to the Court —endeavored to *prove* that Franklin had in fact possessed the stolen lamps.

The government called two rebuttal witnesses regarding the stolen lights, a Mr. Schulman, a hardware store proprietor who recognized the stolen property when it was offered to him by Franklin, and George White, the owner of a sign company from which the bulbs had been taken. Both rather clearly implicated Franklin as to the possession of the merchandise (although it was never made clear whether this was an innocent and unknowing possession or an illicit one).

This raises the question, not of hearsay testimony of all the deeds or misdeeds on which the community constructs reputation, but of the use of direct testimony of prior wrongful acts. Since there was no conviction, it obviously was not admissible for impeachment of the defendant as a witness. Nor, on the present record was it admissible, as may sometimes be permitted,[4] to show motive, purpose, intent or the like, either by prior conviction [5] or proof of the facts.[6]

---

4. Of course, we make no prejudgment as to the admissibility of this testimony on a retrial of this case. It may well be that on such a retrial, the government could lay an adequate foundation for the testimony which was not shown on this record.

5. Miller v. United States, 5 Cir., 1968, 397 F.2d 272 (conviction for forgery five years earlier relevant to establish intent to defraud in trial on similar charge); United States v. Jackson, 6 Cir., 1965, 344 F.2d 922 (defendant charged with Mann Act violation could be cross-examined regarding prior conviction for prostitution).

6. Lindsey v. United States, 5 Cir., 1955, 227 F.2d 113 (defendant's written con-

With the flood light now on the stolen bulbs, it was an easy jump to conclude that he had come by the stolen food products in the same manner.[7]

Reversed and remanded.

fession of similar offense three years earlier was admissible to show intent in Mann Act prosecution); United States v. Franco, 5 Cir., 1969, 413 F.2d 282 (related offenses not charged in the indictment were admissible to show intent in prosecution for passing stolen money orders); Keith v. United States, 5 Cir., 1957, 250 F.2d 355 (proof of other false entries admissible in prosecution for violation of Internal Revenue liquor record-keeping provisions); Gilstrap v. United States, 5 Cir., 1968, 389 F.2d 6 (evidence of prior illicit gambling operations admissible to show motive and purpose); Weiss v. United States, 5 Cir., 1941, 122 F.2d 675 (evidence of other similar acts admissible to show a design or scheme in prosecution for fraud). *See also* Oden v. United States, 5 Cir., 1969, 410 F.2d 103 (evidence of another crime committed after the one on trial admissible to show intent).

7. Bullard v. United States, 5 Cir., 1968, 395 F.2d 658 (witness' testimony regarding specific prior criminal acts inadmissible because not sufficiently related to case on trial); Baker v. United States, 5 Cir., 1956, 227 F.2d 376 (prior convic-

tions not admissible where intent not a factor in the crime charged); Hamilton v. United States, 5 Cir., 1969, 409 F.2d 928 (prior conviction for illegal possession of whiskey in a "dry" county not admissible in "moonshine" case where intent is not a factor). *See also,* United States v. Beno, 2 Cir., 1963, 324 F.2d 582. The *Beno* case bore facts strikingly similar to the present case. Beno was an Internal Revenue Agent who solicited a gratuity in return for his "surveying" the taxpayer's return, an esoteric term implying that Beno would not scrutinize the report. On the trial, a number of Beno's other misdeeds were admitted into evidence on the theory that the defendant's presentation of character witnesses opened the door to an accounting of his entire history. There, as here, the prosecution made ample use of the "have you heard?" form of cross-examination, and called rebuttal witnesses whose testimony proved Beno's complicity in at least five other incidents ranging from ethical conflicts to outright crimes. The Second Circuit, in adhering to the *Michelson* standard, found that these rebuttal witnesses and the cross-examination proved too much.