**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Silvester Sam JACKSON, Defendant-Appellant.**

**No. 72–1450.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1972.

Decided July 16, 1973.

Jean Powers Kamp, Federal Defender Program, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Dan K. Webb, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

SWYGERT, Chief Judge.

Silvester Sam Jackson, defendant-appellant, and Nicholas Romak, were indicted for violating the Dyer Act: possession of a 1970 Peterbilt truck which had been stolen in Cape Girardeau, Missouri and later found in Orland Park, Illinois. Jackson was found guilty by a jury verdict and sentenced to five years imprisonment.[1] The appeal from his conviction raises two issues: (1) whether the district court improperly limited the cross-examination of a Government witness; and (2) whether the prosecutor stated his personal opinion on the credibility of the Government witnesses in his final argument. We reject both contentions and affirm.

Briefly stated, the evidence showed that on April 16, 1971, a stolen 1970 Peterbilt truck was found in the possession of Nicholas Romak. Romak, who was charged together with appellant Jackson with the unlawful possession of a stolen vehicle, agreed to become a Government witness in the prosecution of Jackson. At Jackson's trial Romak stated that he had bought the truck from Jackson for $4,800 with the understanding that it was "hot." Payment was made in installments, some by check and some in cash. Several checks written by Romak to Jackson were identified as part of his payments for the truck. In addition, Romak testified to various details concerning the delivery of the truck and the alteration of the serial numbers on it.

The Government's second principal witness, John Reichling, who lived with Jackson, testified that in September 1970 Jackson told him that he had a stolen Peterbilt truck for which he thought he had located a buyer. Jackson also told Reichling that he planned to do a "numbers job" on it. Reichling further stated that Jackson later told him that the "numbers job" had been successfully completed and the truck sold to Romak. According to Reichling's testimony, the appellant showed him the stolen truck, which at the time was at Romak's residence. The Government's other witnesses corroborated various details of the serial number alteration and the transfer of possession.

The defense theory, established solely by Jackson's testimony, was that Jackson never had possession of the truck and never sold it to Romak. Jackson testified that he merely told Romak that a party named Buckie Gentry had a Peterbilt truck for sale and that Romak later asked him to do some repair work on the truck. Jackson said that he assumed Romak had purchased the truck from Gentry. Jackson, who had done considerable repair work on another truck belonging to Romak, explained that the checks from Romak were not payments for the stolen truck but were payments for previous repair work he had performed on the other truck.

As to the damaging testimony of Romak and Reichling, appellant attempted to show that both had a strong incentive to perjure themselves. Romak acknowledged under cross-examination that he had pled guilty to possession of the stolen Peterbilt and was given probation. He further stated that his lawyer told him and he believed that he would be given probation if he pleaded guilty and testified for the Government. He denied, however, that he was promised

---

1. Romak pled guilty prior to Jackson's trial and was given probation.

probation by the Government in exchange for his testimony. As to Reichling, it was the defense theory that Reichling was offered the dismissal of an unrelated criminal charge then pending against him in exchange for his testimony. The defense was unable to explore this theory in detail because of the allegedly erroneous ruling by the trial court, but the cross-examination of Reichling did establish that Reichling had said to the appellant that the Government had told him that it was Jackson that they were "after" and that if he, Reichling, did not help to implicate him, they would "get" him.

## I

With respect to the appellant's first contention, a more detailed exposition of the facts is needed. Prior to cross-examination of witness Reichling, defense counsel explained to the trial judge, out of the presence of the jury, that she intended to examine the witness regarding promises which may have been made by the prosecutor with respect to an unrelated criminal charge then pending against him. The defense hoped to elicit a response by which the jury could infer that Reichling was testifying against Jackson in exchange for the dismissal of the other charge.[2] Defense counsel moved for an instruction to the witness not to "blurt out" the fact that Jackson was also charged with that offense. Unfortunately, the trial judge never ruled on the specific motion to instruct the witness. Rather, a colloquy among the judge, the prosecutor, and defense counsel ensued in which the assistant United States Attorney objected to the motion, expressing his contention that the intended cross-examination would "open the door" for testimony on redirect that the defendant Jackson was in fact involved in the other crime. Essentially the colloquy dealt with the question of whether the information sought to be excluded would be proper on redirect. The argument concluded:

THE COURT: Well, you are treading on dangerous grounds if you go into that aspect of the examination.

DEFENSE COUNSEL: That is why I want to bring it up now.

THE COURT: Because he certainly has a right to go into the other phase of it.

DEFENSE COUNSEL: I would think the prejudice would so far outweigh the relevance, and I think it is definitely relevant to showing a possible motivation for lying. That is obviously the theory of the defense here, that the FBI has pressured people into implicating Jackson.

THE COURT: I am going to permit—depending on what you ask the witness—I don't know what you are going to ask him specifically, but I certainly would permit the U.S. Attorney to go into the question if the door is opened.

DEFENSE COUNSEL: You will allow him to testify about Jackson specifically?

THE COURT: If the cross-examination warrants it. I will. I can't prejudge it at this time.

DEFENSE COUNSEL: Thank you.

THE COURT: I just want to call it to your attention that you are treading on dangerous ground.

■■ Defense counsel neither insisted on a ruling on her motion nor pursued the matter further during the remainder of the cross-examination. The defendant argues that the trial judge's admonition regarding the "dangerous" nature of the proposed cross-examination effectively prevented his attorney from pursuing a legitimate line of inquiry which was of vital importance to the defense. We do not read the admonition in that manner. As we have noted, it is unfortunate that the trial judge did not rule specifically on the motion to direct the witness not to mention the appellant's involvement with the other

2. The charge was later dismissed by the Government.

crime until he could rule on its admissibility. It was the moving party's obligation, however, to insist upon a ruling on the motion, and the fact that counsel allowed the argument to divert the judge from a ruling on the particular motion cannot be said to be error. This is especially true where, as here, the ruling that was made was both reasonable and correct though not responsive to the original motion.

Further, the judge did not limit the area of inquiry open to the defendant; he merely pointed out that if the cross-examination probed into the unrelated crime to the extent that it raised questions of an impeaching nature, he would permit the Government to rehabilitate the witness by exploring the circumstances of the crime to show that the witness was either not involved or only incidentally involved. That, we believe, was a proper admonition. Indeed, it was no more than an admonition, for it was coupled with the statement that the court was not in a position to prejudge a question which the cross-examination had not yet reached. That defense counsel did not intend to impeach the witness with the prior offense, but only to raise the question as it related to possible promises made by the Government which might have influenced the witnesses' testimony, is of no moment to Jackson's contention on appeal since the judge's ruling on the matter did not preclude the inquiry counsel sought to make. Although there appears to have been a misunderstanding between counsel and the judge as to what was or was not decided, a fair reading of the colloquy will not support the appellant's contention that it foreclosed an area of cross-examination.

## II

■ The appellant's second contention concerns remarks made by the prosecutor during his closing argument which allegedly vouched for the credibility of Government witness Romak. The most questionable remark by the assistant United States Attorney, and the only one which we need address, was:

"But he [Romak] told you that there reached a point where he decided to testify. He came in and talked to me, and he stated he told the truth, and he told the truth. And you saw him testify."

It has long been the law in this and other circuits that it is error for a prosecutor to inject into the proceedings his personal opinion as to the credibility of witnesses. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1957); United States v. Greer, 467 F.2d 1064, 1072 (7th Cir. 1972); Hall v. United States, 419 F.2d 582 (5th Cir. 1969); United States v. Hamilton, 409 F.2d 404, 407 (7th Cir. 1969); Gandy v. United States, 386 F.2d 516, 517 (5th Cir. 1967); Gradsky v. United States, 373 F.2d 706 (5th Cir. 1967).

In *Hamilton*, this court deprecated the use of the personal pronoun "I" in closing argument but held the error to be harmless where the statement was not likely to have misled the jury "into believing that the prosecutor was hinting at private knowledge beyond the evidence adduced in Court." United States v. Hamilton, 409 F.2d at 407. Here, though the prosecutor tread dangerously and irresponsibly close to the precipice of reversible error, the statement, when considered within the context of the entire argument, was not likely to have misled the jury into believing that the prosecutor had information to support the witness' credibility which had not been placed into evidence. The prosecutor's assertion that the witness told the truth was followed immediately by his statement that the jury had seen him testify and could judge for themselves his credibility. The statement "and he told the truth" can, therefore, be read as an exhortation to the jury to decide on the basis of their personal observations that the witness was telling the truth. Thus, though we do not approve of the prosecutor's first person assertion that the witness told the truth, we find the

suggestion that the prosecutor had personal knowledge of the witness' veracity insufficient to warrant reversal.

The judgment of the district court is affirmed.