UNITED STATES of America, Plaintiff-Appellee,

v.

Ernest T. DAVIS, Defendant-Appellant.

No. 75–1849.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1976.

Decided March 12, 1976.

Jean Powers Kamp, Federal Defender Program, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., William Bryan Lytton, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, SPRECHER and TONE, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendant Ernest T. Davis was charged in a one-count indictment with theft of mail, in violation of 18 U.S.C. § 1709,[1] at a time when he was employed by the United States Postal Service. Following a trial by jury, he was convicted as charged. A sentence of 18 months was imposed. This appeal followed.

The parties do not dispute the following statement of facts. Davis had been employed by the Postal Service since 1955. On January 15, 1975, he was working at the Loop Postal Station in Chicago, Illinois, as a distribution clerk. On that date, he was under observation by several postal inspectors, who also filmed portions of his activities with a video tape machine. At approximately 1:40 p. m., Davis was sorting mail,

---

1. 18 U.S.C. § 1709 provides in relevant part:

Whoever, being a Postal Service officer or employee, embezzles any letter * * * or mail * * * which comes into his possession intended to be conveyed by mail * * * shall be fined not more than $2,000 or imprisoned not more than five years, or both.

including mail addressed to Father Close.[2] As part of his duties, Davis took possession of 86 letters addressed to Father Close, tied them in a bundle, stepped behind a distribution case, and placed them inside his jacket, under his arm. As Davis was near the proper receptacle for the Father Close letters, at approximately 1:45 to 1:50 p. m., he was placed under arrest by postal inspectors. Davis claims the sole question for the jury at this point was his intent in placing the letters under his jacket.

Immediately after his arrest, Davis was taken to the postal inspector's office in the Loop Postal Station and advised of his constitutional rights. Since the forms and equipment necessary for his processing were not available at the Loop Station, Davis was then taken to the Main Post Office at 433 West Van Buren Street, in Chicago, for the purpose of processing and interrogation. This location was about a 10 to 15 minute drive from the Loop Station.

Upon arriving at the Main Post Office, Davis was taken to an interview room and again advised of his constitutional rights. He was given a form to read on which his rights were set forth.[3] When Davis was asked to sign the waiver presented to him, he declined to sign it then but asked if he could sign it later. He gave the information necessary for his personal history form. He was then asked to "explain" about taking the letters in question. He first said: "I couldn't say about that. I don't remember." He did not at any time say or indicate that he did not want to answer any more questions. About 10 to 15 minutes later, Davis orally admitted his guilt regarding the 86 Father Close letters and also admitted having taken other mail in the past. At about 3:15 p. m., Davis put his statement in writing,[4] and signed the waiver form.

Davis was subsequently photographed and fingerprinted, and the entire procedure was completed shortly after 4:10 p. m. Davis was advised at all times of his right to counsel but did not then request any. About 5:10 p. m., after Davis had made a telephone call, he was transported by the Chicago police for overnight lodging at 11th and State Streets. The next morning, Davis appeared before a magistrate and was released on his own recognizance.

The trial court held a pre-trial hearing on defendant's motion to suppress his confession statement and denied the motion. Defendant raises two grounds for reversing the trial court's ruling: (1) the undue delay in bringing defendant before the magistrate in alleged violation of Rule 5(a), Federal Rules of Criminal Procedure, 18 U.S.C.;[5] and (2) the involuntariness of defendant's confession and the incorrect standards given by the trial court in denying the motion to suppress on that ground.

Defendant was represented both at trial and on appeal by a competent court-appointed Federal Defender.

---

2. This is a charitable organization whose mail was addressed to four different names: Father Close, Mission of Our Lady of Mercy, Father Kelley's Home of Homeless Boys and Waif's Messenger. All four names refer to the same organization at the same address and all receive contributions by mail.

3. This met the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. The statement reads as follows:
   I am Ernest T. Davis, employed at the Loop Station 211 So. Clark Street, Chicago, Illinois. I was employed as a distribution clerk. This day Jan. 15, 1975 I took 86 letters from the mail. Periodically I did this the purpose I suppose to see if it could be gotten away with going back to August of '74. The estimated realization of monetary gains approximately $300.00 of which I have made restitution. All of these letters did not contain cash, there was checks also which was thrown away. The letters involved was First Class addressed to Father Kelley and Father Close.

5. Rule 5(a) provides in relevant part:
   An officer making an arrest * * * without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate.

## APPEARANCE BEFORE THE MAGISTRATE

Rule 5(a) must be read together with 18 U.S.C. § 3501(c),[6] in the context of the issue raised in this matter concerning the delay between the time of defendant's arrest and his initial appearance before a magistrate. Where Davis made his confession statement less than two hours after his arrest, it would appear that under the provisions of Section 3501(c), such delay may not be the *sole* ground for denying the admissibility of the confession.

Defendant urges that the delay in his being brought before the magistrate was excessive under the rule laid down in *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), for the reason that the delay was deliberately induced for the express purpose of producing evidence, citing *United States v. Hamilton,* 7 Cir., 409 F.2d 404, 406 (1969). In the instant case defendant charges that the delay was for the purpose of obtaining the confession.

However, *Mallory* is readily distinguishable from the situation before us. In *Mallory* a suspect was questioned for about six hours without any warnings of his constitutional rights either to remain silent or his right to counsel. There, it was only after the suspect confessed, that the police arraigned him. 354 U.S. at 455, 77 S.Ct. at 1359, 1 L.Ed.2d at 1483. Here, Davis was fully advised of his constitutional rights at least twice; he understood his rights and voluntarily agreed to confess his guilt without any coercion after fifteen minutes.

Further, *Mallory* reaffirms the Supreme Court's prior holding in *McNabb v. United States,* 318 U.S. 332, 343–4, 63 S.Ct. 608, 614, 87 L.Ed. 819, 825–26 (1943), which spelled out the important reasons of policy behind the enactment of Rule 5(a).

*McNabb* makes clear that "this procedural requirement checks resort to those reprehensible practices known as the 'third degree' which, though universally rejected as indefensible, still find their way into use. It aims to avoid all the evil implications of secret interrogation of persons accused of crime." *Id.* at 344, 63 S.Ct. at 614, 87 L.Ed. at 826. There was nothing akin to "third degree" here.

*Hamilton,* cited by defendant, was a case in which our court properly found that under the facts, the defendant had no reasonable basis for an inference that a delay in bringing him before a magistrate was deliberately induced for the express purpose of producing evidence. 409 F.2d at 406. We fail to see how the defendant here can find comfort in that decision. Furthermore, *Hamilton* also cites a correct statement of the law by our court in *United States v. Taylor,* 7 Cir., 374 F.2d 753, 757 (1967), in which we held that "[u]nder Rule 5(a), delay after a confession is not as significant as delay before it," and "[t]he problem of delay is to be solved by determining whether the delay which occurred was in fact unnecessary when the sum total of the circumstances shown is considered." (Citations omitted.)

It appears from the record that there was a time interval of from 10 to 15 minutes from the beginning of the interrogation of Davis to his resulting confession. Further, the total time delay was extended for a period which did not exceed approximately one hour until Davis wrote and signed his confession statement. Thereafter, the defendant was booked, fingerprinted and photographed. These procedures were completed shortly after 4:00 p. m. The normal procedure in the Northern District of Illinois is for a federal officer to discuss the case with an Assistant United States Attor-

---

**6.** Section 3501(c) in relevant part reads:

In any criminal prosecution by the United States * * * a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall *not* be inadmissible *solely* because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States * * * if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and *if such confession was made or given by such person within six hours immediately following his arrest or other detention.* (Emphasis added.)

ney so that a prosecutor's decision can be reached, in order that a complaint and warrant may be prepared. It is reasonable to assume that this procedure took place during the time in question and necessarily delayed defendant's arraignment before the magistrate until the following morning.

■ We conclude from these facts that there was no violation of the strictures of Rule 5(a), when read in the light of Section 3501(c). When the sum total of the circumstances shown is considered, we hold that the trial court did not err in denying the motion for suppression in the pre-trial hearing or as renewed thereafter in the trial of the case on the merits.

## VOLUNTARINESS

### (1)

■ One basis for defendant's motion to suppress his statements of confession was that he had not been properly advised of his rights prior thereto, and in particular of his right to representation by counsel. There is no merit in this contention. The record shows that defendant was orally informed of his *Miranda* rights twice and that he read them himself at least once. The testimony at the suppression hearing shows that he was advised of his right to be represented by counsel and, if he could not afford counsel, to have one appointed for him. Further, defendant was specifically asked whether he had an attorney and was told that if he wanted to make a phone call, he could. The confession statement and the waiver signed by Davis included the statement that he had a right to an appointed counsel. At no stage of the initial proceedings did defendant ever deny that he understood the warnings given to him. There was no showing of coercion, harassment or excessive interrogation.

This case is consistent with our holding in *United States v. Gardner,* 7 Cir., 516 F.2d 334, 341 (1975), *cert. denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89. There we held that despite the fact that defendant had declined to sign the waiver form, the record

established that his statements were voluntary, notwithstanding his argument that he had requested an attorney to be present and notwithstanding an approximate four-hour delay between arrest and arraignment. Declining to sign a waiver form was said to be only one factor among others to be considered in determining the voluntariness of the statements.[7]

*Gardner,* 516 F.2d at 341–2, also distinguished *United States v. Jenkins,* 7 Cir., 440 F.2d 574 (1971), and *United States v. Nielsen,* 7 Cir., 392 F.2d 849 (1968), cited and relied upon by defendant.

We find no substance in defendant's belated contention that he "apparently did not understand that he had the right to the immediate appointment of a Federal Defender." To our knowledge no court has held that the standard *Miranda* warnings concerning the presence and appointment of an attorney are insufficient.

### (2)

Defendant charges reversible error on the ground that the trial court articulated incorrect standards in denying defendant's motion to suppress. At one point, the court stated: "So, I do not believe you [Davis] have supported the motion by *clear and convincing evidence,* or even by the *weight of the evidence.* So, on the motion you filed today I will find in favor of the Government and deny the motion to suppress." (Emphasis added.)

It is conceded that the standards articulated by the trial court were incorrect. In *Gardner,* the trial court merely stated at the suppression hearing: "The motion to suppress is overruled," and gave no reasons. There we said: "Although it would have been the better practice for the court to state that it found the statements to be voluntary by the preponderance of the evidence and to give its reasons for so concluding, * * * we find that the court considered the appropriate *Miranda* requirements, and in light of the record, the court's

7. *See also United States v. McDaniel,* 5 Cir., 463 F.2d 129, 135 (1972), *cert. denied,* 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973); *United States v. Devall,* 5 Cir., 462 F.2d 137, 141–2 (1972); and *United States v. Ellis,* 8 Cir., 457 F.2d 1204, 1207 (1972).

ruling was not inadequate." 516 F.2d at 341. (Emphasis added.) [8]

■ Accordingly, under the record in this case, it is clear to us that the trial court considered the relevant evidence on the basis of the credibility of the witnesses. It credited the postal inspectors and did not credit Davis. Although the trial court articulated incorrect standards in denying defendant's motion to suppress, yet the court was aware of the requirements of *Miranda,* and its conclusion that the confession was voluntary, in that defendant had been adequately informed of his right to counsel before any questioning, finds adequate support in the record and fully meets the requirements imposed by the Supreme Court in *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618, 627 (1972). [9]

### PREJUDICIAL MISCONDUCT

Defendant properly raises two incidents at the trial which he charges to be prejudicial misconduct by the prosecution. One incident involves a statement made by the government prosecutor in final argument to the jury which cited a prior consistent statement by Postal Inspector Wilson which was not in evidence. The other concerns the facial expression of Inspector Wilson while defendant was being cross-examined by the prosecutor.

Exercising our supervisory powers over the trial court and in light of our recent carefully drawn decision in *United States v. Fearns,* 7 Cir., 501 F.2d 486 (1974), we feel compelled to examine this matter in some depth.

#### (1)

The only issue at trial for the jury to decide was the question of defendant's intent when he placed the 86 letters addressed to Father Close under his arm inside his unzipped jacket. Defendant claimed it was an accident. The Govern-

ment argued that defendant intended to steal the mail. By its verdict the jury obviously rejected the defendant's version and found him guilty of the charge of stealing the mail. Most of the evidence on this issue came from Davis himself, and from Postal Inspector Wilson.

During Inspector Wilson's direct testimony in the Government's case in chief, he testified in detail that he saw Davis collect the Father Close mail, face the letters inside so that the addresses would not show and "were invisible to any observer," and then tie them in a bundle at the tying machine. Inspector Wilson described the route Davis travelled in carrying the bundle into the lock box section, referring to the lock boxes rented by mail patrons. Inspector Wilson was interrupted here by a juror who asked two questions about how the boxes were locked.

On cross-examination, defense counsel elicited that Wilson had made no mention of the innerfacing of the addresses in his report to the United States Attorney's Office. Neither did Wilson mention this subject during his testimony at a Civil Service Commission hearing where Davis contested his dismissal from the Post Office.

Defense counsel used this testimony in her final argument as follows:

> The mail wasn't turned inside, ladies and gentlemen. If it had been, Inspector Wilson would have mentioned it before. He would have mentioned it in his report, the famous report that he made to Miss Jackson to help her decide whether to prosecute or not. * * * He would have mentioned it at the Civil Service Commission.

In her rebuttal, the government prosecutor made the argument complained of here:

> Now, he says he saw it on the film. You saw him tie the letters on the film, but it wasn't sure whether the addresses were

---

**8.** *See United States v. Chapman,* 3 Cir., 448 F.2d 1381, 1387 n. 8 (1971), *cert. denied,* 405 U.S. 929, 92 S.Ct. 982, 30 L.Ed.2d 803 (1972).

**9.** In *Lego* the Court held:
[W]hen a confession challenged as involuntary is sought to be used against a criminal defend-

ant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. Thus, the prosecution must prove at least by *a preponderance of the evidence* that the confession was voluntary. (Emphasis added.)

in or out and he says if Inspector Wilson had made that statement before, it would have been in the report. That is nonsense, ladies and gentlemen. This is a report that he sends over to the U.S. Attorney's office. Subsequently I sit down and I discuss with Mr. Wilson what he did and what he didn't see. You heard him. Miss Riley is not an attorney. I don't know why Miss Riley didn't ask him about whether he turned addresses inside or out and that is unimportant to me. *When I talked to Inspector Wilson and he told me that, I realized the importance of that, ladies and gentlemen.* (Emphasis added.)

There was no testimony by anyone that Inspector Wilson had told the prosecutor about the innerfacing of the addresses at the time he made his initial report, or at any other time.

At the time of this statement to the jury, defense counsel objected to the trial court. The court merely stated to the prosecutor: "Well, just stick to the evidence." The prosecutor again incorrectly stated: "That is the evidence, your Honor." The court replied: "All right."

The matter was raised again in defendant's motion for a new trial, filed August 7, 1975, quoting the improper statement by the prosecutor, and in a supporting memorandum citing *United States v. Fearns.* Defendant's several post-trial motions were denied by the trial court on September 16, 1975. However, it appears that the trial judge had not received a copy of the August 7 motion for a new trial or defendant's supporting memorandum, in view of his ruling: *"The Government's answering memorandum* filed August 15, 1975 *refers to an allegedly improper closing argument made by the prosecutor. We do not find this point raised in any pleading filed by the defendant and assume it has been waived. Even if it was not waived, we do not believe that the argument was sufficiently improper or prejudicial to justify a new trial."* (Emphasis added.)

■ It is our considered judgment that this case is controlled by our decision in

*Fearns,* 501 F.2d at 488–9.[10] There, as in the case at bar, the prosecutor violated the fundamental rule that argument to a jury is limited to the facts in evidence. It was done by the blunt assertion of a prior consistent statement that was not in evidence. Here the statement not in evidence was repeated again after objection was made.

In the instant case we are not persuaded that the error was harmless. It is with regret that we feel it necessary to reverse convictions because government counsel continue to fail to heed our admonitions. The right to fair play should not be denied to any litigant. Under *Fearns,* the case must be retried.

(2)

The charge of misconduct by Inspector Wilson compels our attention. Wilson played an important role in the investigation of the actions of Davis leading up to his subsequent indictment and conviction. During the trial, Wilson was seated at the prosecutor's table. Defendant asserts that his own credibility was undercut during his cross-examination by the prosecutor because of Wilson's conduct. On a special voir dire conducted by the trial court immediately following the return of the jury verdict, one of the jurors testified that at the time in question Inspector Wilson "roared back and laughed, or something." That juror said the matter was not discussed in the jury room and the juror's own judgment was not influenced by the occurrence. No other juror noticed it. The trial judge did not notice it but remarked that he would have called it to the prosecutor's attention if he had. He also instructed the prosecutor to admonish Mr. Wilson against the practice.

Defense counsel stated to the court that she had noticed the same misconduct on three occasions during defendant's cross-examination and for that reason she had requested an immediate side bar, which was denied.

■ Wilson's conduct was obviously improper. Even though it may not in and of itself be sufficient to warrant a reversal,

10. *See also United States v. Wasko,* 7 Cir., 473 F.2d 1282, 1283–4 (1973).

when coupled with the prosecutorial misconduct, it lends additional weight to our finding that defendant was denied a fair trial.

In sum, the judgment of conviction is reversed on the ground of denial of a fair trial. The case is ordered remanded for a new trial before the same district judge who presided over the first trial. The trial court is respectfully requested to observe the correct standard of proof in determining the voluntariness of the confession should that occasion arise on the retrial.

Reversed and Remanded.