In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1281

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

IVY T. TUCKER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 09-CR-131—**Rudolph T. Randa,** *Judge.*

ARGUED DECEMBER 4, 2012—DECIDED APRIL 30, 2013

Before BAUER and HAMILTON, *Circuit Judges*, and
THARP,[*] *District Judge.*

BAUER, *Circuit Judge.*    Following a three-day jury
trial, Ivy T. Tucker was found guilty of conspiracy to dis-
tribute more than one kilogram of heroin in violation of

[*] The Honorable John J. Tharp, Jr., District Judge of the
United States District Court for the Northern District of
Illinois, Eastern Division, sitting by designation.

21 U.S.C. §§ 841 (a)(1) and (b)(1)(A). Tucker was sentenced to 480 months' imprisonment, followed by five years of supervised release. On appeal, Tucker argues he was denied a fair trial because of misconduct by the prosecutor and the improper admittance of "dual capacity" evidence testimony of a police officer. For the reasons that follow, we affirm.

## I. BACKGROUND

On May 12, 2009, Tucker and nine co-defendants were charged with conspiracy to distribute more than one kilogram of heroin, the use of which resulted in a death on January 9, 2009. A seven-count superseding indictment returned on June 23, 2009, re-alleged the conspiracy count against Tucker and his co-defendants, and added six additional counts charging several of Tucker's co-conspirators with distribution of heroin on specific occasions during 2008 and 2009. All of Tucker's co-defendants pleaded guilty; Tucker proceeded to a three-day jury trial on October 12, 2010.

During opening statements, the prosecutor explained that the evidence against Tucker would mostly be in the form of testimony from his co-conspirators, all of whom had criminal backgrounds and drug problems. After summarizing the investigation that lead to Tucker's arrest, the prosecutor commented on the devastating effects of heroin, and referenced prospective jurors' personal experiences with family members' drug abuse that they had shared with the court during voir dire. He said:

> And heroin is a highly addictive drug. It's a horrible drug. And as we all know from news accounts, and some of the people told us during jury selection, it's a drug that can kill you. It can kill you the first time you use it . . . .

Tucker's trial counsel did not object to these statements.

The evidence at trial did consist primarily of testimony from Tucker's nine co-conspirators, who testified that Tucker ran a heroin distribution ring in Racine, Wisconsin, from 2008 through 2009. The jury also heard from the lead investigator on the case, Officer Jason Baranek, a twelve-year veteran of the Oak Creek, Wisconsin, Police Department. Officer Baranek's testimony set the stage for the rest of the Government's case by describing how his investigation of Tucker unfolded.

Officer Baranek explained that in early 2008, Oak Creek, Wisconsin, was plagued by rising heroin overdoses and related theft cases. This disturbing trend prompted Officer Baranek, a member of the Drug Enforcement Unit, to begin an investigation into heroin trafficking in Racine County. Officer Baranek explained that as part of the investigation, local law enforcement, working in conjunction with the Federal Drug Enforcement Administration (DEA), conducted "controlled purchases" in which a cooperating informant would use government money to buy heroin from his drug source. Then the individuals arrested after the controlled purchase would be "debriefed." During debriefing, a member of law enforcement interviewed the suspects in hopes of uncovering the source of their drug supply, as well as

the identity of any other individuals involved, any practices used to deliver the drugs, and whether any other crimes were being committed. Officer Baranek also provided the jury with details about the use of "stash houses" and other drug-trafficking practices based upon his experience as a member of the Drug Enforcement Unit.

Destiny Merritt, Tucker's ex-girlfriend, was one of the nine testifying co-conspirators at his trial. She said the two began dating in 2008. Merritt testified that Tucker paid her expenses, such as rent and car payments, and in exchange Merritt sold heroin for Tucker and allowed him to store drugs in her apartment. Merritt stated that she accompanied Tucker on trips where he purchased heroin, paying approximately $70,000 for a kilogram. Merritt also testified that she aided Tucker in supplying multiple customers with heroin. Tucker would "front" the drugs to Merritt, and she would reimburse him once she was paid by the customers.

Charles Stuck, another co-conspirator, also testified against Tucker. Stuck testified that he initially purchased one to two grams of heroin from Merritt per week and later increased the amount to multiple grams daily. Stuck kept some of the heroin for personal use and sold the rest in South Milwaukee. Stuck also testified that Merritt told him that Tucker was her heroin supplier, and on at least one occasion, Tucker accompanied Merritt when she sold to Stuck. Furthermore, Stuck testified that Tucker asked him if he wanted to start selling heroin for him.

In addition to Stuck and Merritt, seven other individuals took the stand and identified Tucker as the source of their heroin supply. During his defense, Tucker offered into evidence a stipulation that, if called to testify, Noconnco Price (who was never charged in relation to this case) would state that he spoke with DEA Agent Ken Darling on January 14, 2009, and identified Tucker as a customer of another co-conspirator, rather than the central supplier. Tucker exercised his right not to testify, and the district court instructed the jury that no inference of guilt could be drawn from that decision.

During closing arguments, defense counsel questioned the credibility of the Government's witnesses by implying they had a motivation to lie in exchange for favorable plea deals. In rebuttal, the prosecutor stated:

> But we're supposed to trust that they're smart enough that they all get together somewhere, somehow—some of these people are out some are in jail. They're all over the place. But they all sit down shortly after their arrest and say this is what happened. And—what? All their stories are the same? It's the same guy? It's Mr. Tucker.

The prosecutor also explained to the jury how plea agreements may affect the testifying co-conspirators:

> They testified as to their deal. Their deal—their deal isn't made with the Government. They're still facing long prison terms. And their deal and their ultimate sentence isn't decided by the Government. It's not decided by the United States Attorneys Office. It's decided by one man. That's Judge Randa, who's

sitting in there. Who's listening to this testimony. Who's examining what these witnesses say. And he'll make the ultimate determination.

The prosecutor went on to add:

You know, it's one person's witness against another. And in this case it's nine witnesses against Mr. Tucker, saying that he was involved in this role, in this conspiracy. You've heard the evidence in this case. You—each and every one of you know what the truth is in this case.

The prosecutor then utilized imagery of local children purchasing heroin from street dealers:

After he was selling it to the Oak Creek kids, as Mr. [William] White testified to. There are all theses kids coming down from Oak Creek, Franklin, South Milwaukee. You know, we know that there's an increase in heroin because we read about it every day in the paper. And these kids are going down there looking for one thing. They're looking for heroin.

After closing arguments, the district court instructed the jury as to the law, reminded it that the lawyers' statements are not evidence, and again admonished the jury that no inference of guilt could be drawn from Tucker's decision not to testify. Ultimately, the jury returned a verdict of guilty on the conspiracy count and found that the offense involved more than one kilogram of heroin. Tucker was sentenced to 480 months' imprisonment, followed by five years of supervised release. Tucker filed a timely notice of appeal on February 7, 2012.

## II.  DISCUSSION

Tucker challenges his conviction on two grounds. First, he argues that the prosecutor made numerous improper remarks that denied Tucker his right to a fair trial under the due process clause of the Fifth Amendment to the United States Constitution. Second, he contends that Officer Baranek was improperly allowed to testify as a "dual capacity" witness. Tucker has an uphill battle on appeal, since defense counsel failed to make objections at trial, this Court's review is limited to plain error. *United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012). Under the plain error standard, we must determine whether there was (1) an error, (2) that was plain, meaning clear or obvious, (3) that affected the defendant's substantial rights in that he probably would not have been convicted absent the error, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* Even if there is a finding of plain error, in order to prevail, Tucker must "show that the error caused a 'miscarriage of justice, in the sense of seriously affecting the fairness, integrity, or public reputation of judicial proceedings.'" *Id*. (citing *United States v. Ambrose*, 668 F.3d 943, 963-64 (7th Cir. 2012)).

### A.  Prosecutorial Misconduct

We first consider Tucker's argument that improper statements by the prosecutor denied him a fair trial. When evaluating questions of prosecutorial misconduct, we undertake a two-part inquiry. We first determine

whether the prosecutor's conduct was improper, and if so, we then evaluate the conduct in light of the entire record to determine if the conduct deprived the defendant of a fair trial. *United States v. Smith*, 674 F.3d 722, 728-29 (7th Cir. 2012). "[I]t is not enough that the prosecutor's remarks were undesirable or even universally condemned. The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

Here, Tucker argues that the prosecutor: (1) referenced prior witness statements not in evidence; (2) improperly commented on Tucker's decision not to testify; (3) misconstrued the nature of the co-conspirators' plea agreements; and (4) improperly referenced familial experiences with heroin that jurors' shared with the court during voir dire. We address each of his contentions in turn.

### 1.  The Prosecutor Referenced Prior Consistent Statements Not in Evidence.

In this case, nine co-defendants with firsthand knowledge of Tucker's drug trafficking testified against him. This testimony was the bulk of the Government's evidence, so the case hinged a good deal on their credibility. In an attempt to undermine that credibility, Tucker's trial counsel pointed out during cross-examination that these witnesses had a motive to lie in order to receive favorable plea agreements from the Government. The prosecutor, in turn, attempted to bolster the credibility

of these witnesses during closing arguments by making statements that could be construed as suggesting that all nine of Tucker's co-conspirators, immediately after being arrested, told law enforcement that Tucker was the source of their heroin supply. However, no prior consistent statements were offered into evidence during the trial so, even when viewed in isolation, it was dangerous for the prosecutor to allude to witness statements that were not offered in evidence.

The more difficult question, however, is whether these improper statements warrant a new trial under the plain error standard of review. Tucker argues that the statements made by the prosecutor amount to powerfully incriminating evidence that cannot be cured. In support of this contention, Tucker relies upon *United States v. Fearns*, 501 F.2d 486 (7th Cir. 1974). In *Fearns*, the prosecutor told the jury during his closing argument that a Government witness made a prior statement "about these men being involved in this" and without that statement the Government "wouldn't have even known about them." *Id.* at 488. There was no objection by defense counsel. Then during rebuttal argument, the prosecutor went on to add, "[I]n connecting with the last statement [defense counsel] made about Dianne, I want to remind you again that she gave us the story before she was ever indicted." *Id.* at 489. Defense counsel did object to that statement, and his objection was sustained.

In evaluating whether the improper comments made by the prosecutor in *Fearns* warranted reversal, we stated that:

> Even though defendants did not object when the prosecutor went outside the record in his [closing] argument, and their objection was sustained when he did so in rebuttal, the prosecutor's gross misconduct requires reversal under the plain error rule.

*Fearns*, 501 F.2d at 489.

Two years later, relying on *Fearns*, we ordered a new trial in *United States v. Davis*, 532 F.2d 22, 28 (7th Cir. 1976). In *Davis*, the prosecutor commented during his closing argument that a witness relayed information to him prior to trial that was consistent with the witness' trial testimony. *Id*. Defense counsel objected, and the court admonished the prosecutor to "[j]ust stick to the evidence." *Id*. Compelled by our decision in *Fearns*, we held that the Government's misstep was not a harmless error as "the prosecutor violated the fundamental rule that argument to a jury is limited to the facts in evidence" and ordered the case to be retried. *Id*.

Tucker argues that *Fearns* establishes that prosecutorial references to prior consistent statements, that were not put before the jury as evidence, "create prejudice that could not have been eradicated by any action of the trial judge." *Fearns*, 501 F.2d at 489. As our questions during oral argument in this case suggested, we believe that such an interpretation of *Fearns* imposes an unreasonable burden on the district court of having to listen to closing arguments with a hair trigger on the mistrial button—whether defense counsel has launched an objection or not. Generally, "a mistrial is appropriate when an event during trial has a real likeli-

hood of preventing a jury from evaluating the evidence fairly and accurately, so that the defendant has been deprived of a fair trial." *United States v. Collins*, 604 F.3d 481, 489 (7th Cir. 2010) (citing *Deicher v. City of Evansville*, 545 F.3d 537, 543 (7th Cir. 2008)). We will only find plain error if the district court failed to declare a mistrial when it was clear and obvious that a mistrial was necessary. *United States v. Tanner*, 628 F.3d 890, 898 (7th Cir. 2010). Meaning, it must have been obvious to the district court both that an error occurred and that the error deprived the defendant of a fair trial. *Id*. However, it appears *Fearns* has been interpreted to impose a duty on the district court to *sua sponte* declare a mistrial when prosecutorial comments potentially cross the line of impropriety, without regard to the critical next step in the analysis. This result is not in harmony with the balance of our case law as we do not review allegations of prosecutorial misconduct in a vacuum, but rather in the larger context of the parties' closing arguments and the trial itself. *Id.* at 896. This aspect of *Fearns* and *Davis* also invites serious double jeopardy risks, since a defendant has the right to have his trial completed by the first jury empaneled to try him, *United States v. Gilmore*, 454 F.3d 725, 729 (7th Cir. 2006), and defense counsel may well have good tactical reasons for not objecting to a prosecutor's mistake in closing argument. See *United States v. Jozwiak*, 954 F.2d 458, 459 (7th Cir. 1992). Therefore, we now overrule *Fearns* to the extent that it imposes such a burden on the district court, and reaffirm our position that even if we determine a comment to be improper when read in isola-

tion, unless the remark, when interpreted through the full context of the record, "so infects the trial with unfairness as to make the resulting conviction a denial of due process," we will not reverse under the plain error test. *United States v. McClinton*, 135 F.3d 1178, 1189 (7th Cir. 1998) (internal citations omitted).[1]

As we have stated, though we may agree with Tucker that the Government's comments were improper, when read within the full context of the record, there is nothing to suggest that these comments denied Tucker a fair trial. The district court instructed the jury that statements of the attorneys are not evidence, and "jurors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot be reasonably expected to put it out of their minds." *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002). Tucker has not provided any support to undermine that presumption. In the face of overwhelming evidence of his guilt, Tucker argues that but for the prosecutor's unfortunate implication the jury would have discredited the corroborated testimony of his nine co-conspirators because of their pending plea agreements. We disagree. The nine co-conspirators gave detailed testimony against Tucker describing both the nature and scope of his heroin-

---

[1] Because this decision overrules a prior decision of this court, pursuant to Circuit Rule 40(e), we have circulated it among all judges in regular active service. None of the judges requested a hearing *en banc*.

distribution ring. There is nothing in the record to suggest that the result of this trial would have been different absent the prosecutor's unfortunate remarks.

### 2. The Prosecutor's Comment Regarding Tucker's Silence.

Next, Tucker argues that the prosecutor made an improper statement that brought to the jury's attention Tucker's decision not to testify on his own behalf. A prosecutor may not make comments, either directly or indirectly, that lead the jury to draw a negative inference from a defendant's decision not to testify. *United States v. Hills*, 618 F.3d 619, 640 (7th Cir. 2010) (citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)). It is a violation of the Fifth Amendment privilege against self-incrimination for a prosecutor to directly and adversely comment on the defendant's failure to testify on his own behalf. *Id*. On the other hand, an indirect comment will be deemed improper "only if (1) the prosecutor manifestly intended to refer to the defendant's silence or (2) a jury would naturally and necessarily take the remark for a comment on the defendant's silence." *United States v. Mietus*, 237 F.3d 866, 871 (7th Cir. 2001).

In this case, during rebuttal argument, the prosecutor stated:

> You know, it's one person's witness against another. And in this case it's nine witnesses against Tucker, saying that he was involved in this role, in this conspiracy.

Tucker finds this comment analogous to the Government's remark in *United States v. Rodriguez*, 627 F.2d 110, 111 (7th Cir. 1980), where we found that the prosecutor made a direct comment on the defendant's silence when he stated that the defendant "had been very quiet at the end of the counsel table." We disagree that the prosecutor's comment in this case rises to that level of impropriety, even when read in isolation. The Government, here, was not making a direct comment on Tucker's decision not to testify, but rather on his assertion—evidenced by his not guilty plea—that he was not involved in a drug ring.

Tucker also argues, in the alternative, that this remark by the prosecutor was an indirect comment on his silence. To that end, Tucker contends that we have consistently found a prosecutor's comment insinuating that the Government's evidence is "uncontradicted," "undenied," "unrebutted," "undisputed," etc., to be improper when the only witness who can provide contrary testimony is the defendant. *United States v. Cotnam*, 88 F.3d 487, 497 (7th Cir. 1996). We do not find that to be the case here. Although Tucker did exercise his right not to testify, he was not the only witness capable of contradicting the Government's version of the facts. Rather, Tucker offered into evidence a stipulation which stated, that if called to testify, Noconnco Price, would say that he identified Tucker to the DEA as a customer of co-conspirator James Silas. This stipulation was offered to rebut the Government's argument that Tucker was the central heroin supplier in the drug ring; we do not interpret the prosecutor's remark to be an

indirect comment on Tucker's decision not to testify on his behalf.

Additionally, even if we found this comment to be made in error, there is nothing in the record to indicate that Tucker suffered any prejudice as a result. The jury was cautioned by the district court that Tucker had a right to remain silent and "was not required to put on any evidence at all." We find no support for Tucker's contention that he was deprived of a fair trial by this remark by the prosecutor.

### 3. The Prosecutor's Vouching for the Government Witnesses by Placing the Authority of the District Court Behind Their Testimony.

Tucker also contends that the prosecutor misrepresented to the jury the nature of the Government witnesses' plea agreements by implying that the reliability of their testimony was vouched for by the district court. Specifically, Tucker argues that the prosecutor represented that the plea agreements were actually between the court and the witnesses.

During rebuttal, the prosecutor explained that Judge Randa, "who's sitting in here . . . listening to this testimony . . . examining what these witnesses say" would make the ultimate decision as to whether the witnesses would receive the benefit of their plea agreements. The Government concedes that the prosecutor's remarks were "inartfully" phrased, and we agree. A prosecutor may not bolster the credibility of a witness by implying

that facts not before the jury lend to the witness' credibility. *United States v. Anderson*, 303 F.3d 847, 855 (7th Cir. 2002). Here, the prosecutor's maladroit handling of his rebuttal argument is regrettable. However, when taken in context, it is apparent that the prosecutor was attempting to convey to the jury that the judge makes the ultimate determination of the testifying co-conspirators' sentence but does not determine their credibility.

### 4. The Prosecutor Commented on the Effect of Heroin on Jurors' Families.

Next, Tucker argues that the prosecutor attempted to emphasize to the jury the devastating effects of heroin by improperly referencing experiences shared by individual jurors with the court during voir dire. While it is impossible to expect a criminal trial to proceed devoid of any emotion, we do prohibit arguments that are so inflammatory and prejudicial that they deprive the defendant of a fair trial. *United States v. Zylstra*, 713 F.2d 1332, 1339 (7th Cir. 1983). We have held that it would be improper for the prosecutor to refer to a juror's family or children specifically, *United States v. Zanin*, 831 F.2d 740, 743 (7th Cir. 1987), but, a prosecutor can impress upon the jury the seriousness of the charges and comment on the ongoing drug problem in American culture. *Zylstra*, 713 F.2d at 1340.

In this case, during his opening statement, the prosecutor told the jury, "[H]eroin is a highly addictive drug . . . and some of the people told us during jury selection, it's a drug that can kill you. It can kill you the

first time you use it." Then during his closing argument, the prosecutor said, "[It] would be easy for you to look at Mr. Tucker and say okay, well, this is a case about heroin distribution in the central city. What does it have to do with me? But don't kid yourself, drugs are destroying this community." Tucker argues the prosecutor's comments were improper because he referenced experiences shared by jurors during jury selection. On review we focus on the "probable effect the prosecutor's [remark] would have on the jury's ability to judge the evidence fairly." *Zanin*, 831 F.2d at 742 (quoting *United States v. Young,* 470 U.S. 1, 12, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985)).

Here, the prosecutor's comments centered around the seriousness of heroin use generally, not the effect of the drug on specific juror's family or friends. Therefore, we find the prosecutor's statements were not improper and would not have interfered with the jury's ability to fairly judge the evidence before it.

### B.  Officer Baranek's "Dual Capacity" Testimony

Tucker next argues that the Government improperly used Officer Baranek as a "dual capacity" witness, without giving the jury any guidance on how to properly evaluate such testimony. A "dual capacity" witness weaves fact and expert opinion testimony together, and "[t]hough such a practice is routinely upheld, particularly where experienced law enforcement officers were involved in the particular investigation at issue, there are inherent dangers involved . . . ." *United States*

*v. York*, 572 F.3d 415, 425 (7th Cir. 2009) (internal citations omitted). For example, the jury may "unduly credit the opinion testimony of an investigating officer based on a perception that the expert was privy to facts about the defendant not presented at trial." *Id.* (citing *United States v. Upton*, 512 F.3d 394, 401 (7th Cir. 2008)). Therefore, district courts must take precautionary measures to ensure the jury understands how to properly evaluate the evidence as presented. Such safeguards can include cautionary jury instructions, a properly structured direct examination which makes clear when the witness is testifying as to facts or when he is offering his expert opinion, establishing the proper foundation for the expert component of the testimony, and allowing for the rigorous cross-examination of the dual capacity witness. *York*, 572 F.3d at 425.

Here, both sides agree that Officer Baranek testified as a dual capacity witness. Again, as no objection was raised, our review is limited to plain error. *United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012). Although the record in this case would surely not serve as a model on how to properly manage a dual capacity witness, the prosecutor did lay a foundation for Officer Baranek's expertise, noting his twelve years of experience in drug investigations and nine years of service on the Drug Enforcement Unit. Officer Baranek was also subject to cross-examination and a re-cross, where his "expert" testimony concerning the role of controlled buys and stash houses in drug investigations was probed by defense counsel. Further, Tucker does not question Officer Baranek's qualifications, and there is little doubt he would

have been able to be qualified as an expert, thus failure to "formally anoint" him as such is harmless. *See York*, 572 F.3d at 422. Although we agree with Tucker that Officer Baranek's dual capacity testimony could have been more deftly conducted, we do not find plain error. As in *Christian*, "given that the safeguards taken (although they could have been better) helped [to] alleviate the risk of jury confusion, we do not find a miscarriage of justice in the blending of dual testimony." *Christian*, 673 F.3d at 714.

### C. Cumulative Error

Lastly, Tucker argues that while the errors that occurred during his trial might not rise to the level of reversible error individually, when they are considered as a whole, they warrant granting him a new trial. To demonstrate that such a cumulative error occurred, Tucker must establish that "(1) at least two errors were committed in the course of the trial; (2) when considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001).

Even accepting that the Government improperly insinuated that the co-conspirators gave prior consistent statements, and also implied that the district court played some role in vouching for the plea agreements of the co-conspirators, we are not convinced that but for these missteps the outcome of Tucker's trial would have been different. Rather, the evidence against Tucker was overwhelming. Nine co-conspirators testified con-

sistently and corroborated that they either: (1) saw Tucker purchase heroin; (2) purchased heroin from Tucker; (3) sold heroin for Tucker; or (4) packaged and distributed heroin for Tucker. The record here fairly demonstrates Tucker's guilt, "such that none of the asserted errors, either individually or cumulatively" could have affected the jury's result. *United States v. Adams*, 628 F.3d 407, 420 (7th Cir. 2010) (quoting *Anderson v. Sternes*, 243 F.3d 1049, 1055 (7th Cir. 2001)). We therefore do not accept Tucker's contention that he was deprived of a fair trial.


## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.