NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1218
_____

UNITED STATES OF AMERICA

v.

BRUCE E. COSTA, JR.,

Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 10-cr-047)
District Judge:  Hon. Leonard P. Stark
_____

Submitted Under Third Circuit LAR 34.1(a)
December 16, 2013

Before:  JORDAN, VANASKIE and VAN ANTWERPEN, *Circuit Judges*.

(Filed: January 2, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Bruce E. Costa, Jr., appeals his convictions for unlawful distribution of oxycodone

and maintaining a premises for distributing oxycodone.  He also appeals the sentence

imposed by the United States District Court for the District of Delaware. For the following reasons, we will affirm.

## I.    Background

In 2007, the Federal Bureau of Investigation ("FBI") and Drug Enforcement Administration ("DEA") suspected that Michael Scalia and his nephew, Joseph Scalia, were distributing oxycodone. The agencies began an investigation, during which they learned that Ronald Turner was the supplier for the Scalias. The DEA began surveillance on Turner in August 2009 and, on three separate occasions – August 29, 2009, September 5, 2009, and September 12, 2009 – they observed him receiving oxycodone pills from Costa outside of the Renaissance Family Pharmacy LLC ("Renaissance"), a retail pharmacy in Claymont, Delaware. Costa, a licensed pharmacist, had opened Renaissance in January 2008.[1] His criminal activity there apparently began soon after. The federal investigation revealed that Renaissance's records between October 1, 2008, and September 27, 2009, failed to account for more than 45,000 oxycodone pills, which was approximately half of all the oxycodone pills that Renaissance ordered.

On September 22, 2010, a federal grand jury in the District of Delaware returned a superseding indictment charging Costa with three counts of unlawful distribution of oxycodone (Counts I, II, and III), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and maintaining a premises for distributing oxycodone (Count IV), in violation of 21 U.S.C. § 856(a)(1). At trial, Costa admitted that he was guilty of Counts I, II, and III.

---

[1] Costa purportedly sold his interest in Renaissance to a friend later in 2008, but he continued to run the store, including ordering and handling oxycodone pills.

The jury found him guilty of all four counts, and he was subsequently sentenced to, *inter alia*, 20 years imprisonment on each count, to be served concurrently. This timely appeal followed.

## II.    Discussion[2]

### A.    *Prosecutorial Misconduct*

Costa argues that we should vacate his conviction and order a new trial because prosecutorial misconduct "permeated" the government's closing argument. (Appellant's Opening Br. at 19.) He primarily argues that the prosecutor (1) improperly shifted the burden of proof and asked the jury to assume guilt by referencing the movie *Jagged Edge*; (2) improperly used Costa's prior convictions to claim that he (Costa) was trying to bargain with the jury; and (3) improperly referenced his (the prosecutor's) own experience and knowledge and vouched for his co-counsel's knowledge and insight. None of these issues warrants a new trial.[3]

---

[2] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[3] Costa also argues that various other errors in the prosecutor's closing argument warrant a new trial, but the complaints are unpersuasive. "The prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991). For example, the argument that Costa may have had more money which the FBI did not locate was based on Costa's assertion that, although the FBI found more than $1.4 million in cash in several safes belonging to Costa, the cash was from legitimate business, not from illegal drug dealing. Given that testimony, it was not plainly erroneous to permit the prosecutor to pose for the jury the question of where the proceeds of Costa's illegal drug dealing were. The prosecutor's statements that Costa's "back is up against the wall" (App. at A1575) and that Costa "is done, stick a fork in him" (App. at A1582) were also not improper because (though one might question the wisdom and tenor of the latter colloquialism) they referred specifically to Counts I, II, and III, to

3

### 1. *Standard of Review*

We review a district court's ruling on a contemporaneous objection for abuse of discretion. *United States v. Lee*, 612 F.3d 170, 193 (3d Cir. 2010). "However, any non-contemporaneous objections are reviewed for plain error." *Id.* As Costa concedes, he "did not raise [any] issues [of prosecutorial misconduct] below except for an objection concerning an improper reference to defense counsel, and an improper reference to the prosecutor's own professional experience."[4] (Appellant's Opening Br. at 1 (citations

---

which Costa had admitted his guilt. Nor was it improper for the prosecutor to comment that oxycodone abuse "causes untold hardship … and … tears at the very fabric of our society," while certain people, including Costa, have "profited from that tragedy and … profited from that hardship." (App. at A1605.) A prosecutor may "impress upon the jury the seriousness of [drug-related] charges," *United States v. Tucker*, 714 F.3d 1006, 1015 (7th Cir. 2013), and, given the evidence of the illegal oxycodone transactions and the money that the FBI found, the assertion that Costa profited from oxycodone abuse was supported by the evidence.

[4] The trial transcript reads, in relevant part:

> [The government]: I suggest to you that this is neither [defense counsel's] nor [Costa's] first time at the rodeo. [Defense counsel] in fact knows, and I don't suggest that 14 members of the citizenry will do this, but he knows that the juries sometimes compromise. And Mr. Costa –
> [Defense counsel]: Objection, your Honor.
> ….
> (Sidebar conference.)
> ….
> [Defense counsel]: *If he had limited it to Mr. Costa, I would have no problem. It's when you put me in it, make it personal. You can't do that.*
> [The government]: Okay. I'll retract then in front of the jury.
> The Court: Do you want the retraction?
> [The government]: That's fine.
> The Court: Then stay away from that.
> (Sidebar conference ends.)

4

omitted).) Therefore, the only issue of alleged misconduct that we will review for abuse of discretion is the prosecutor's comments on the prosecutorial team's knowledge and experience.[5] We will review for plain error the other issues of alleged misconduct.

A finding of prosecutorial misconduct "does not always warrant the granting of a mistrial." *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc). "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context … ." *United States v. Young*, 470 U.S. 1, 11 (1985). "Therefore, we will reverse if we conclude that the prosecutor's remarks, taken in the context of the trial as a whole, prejudiced the defendant[]." *Zehrbach*, 47 F.3d at 1265. To determine prejudice, we consider "the scope of the improper comments in the overall context of trial," "the effect of any curative instructions given," and "the strength of the evidence against the defendant." *United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir. 1999). "If the

----

….
> [The government]: I misspoke. I'm going to stay away from what [defense counsel] said. He is a fine attorney and you guys have seen that. All of you have seen that. And I will stay away from what he knows and what he doesn't know.

(App. at A1584-85) (emphasis added). Near the end of the closing argument, the prosecutor asserted: "It's not my first time [at the rodeo] either. You know, I have prosecuted powder cocaine traffickers[.]" Costa then raised the "[s]ame objection," which the Court sustained. (App. at A1604-05.)

[5] Although Costa objected to the lead prosecutor's reference to his (the prosecutor's) own experience, Costa did not expressly object to the lead prosecutor's reference to the co-prosecutor's knowledge and insight of the case. Nevertheless, we will give Costa the benefit of the doubt and review the references to both the lead prosecutor's experience and the co-prosecutor's knowledge and insight for abuse of discretion.

error is constitutional, we will affirm [only] if we determine that the error is harmless beyond a reasonable doubt." *Lee*, 612 F.3d at 194 (alteration in original) (internal quotation marks omitted). "If the error is non-constitutional, we will affirm when it is highly probable that the error did not contribute to the judgment." *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000) (quoting *Gov't of V.I. v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976)).

### 2. *Alleged Misconduct*

#### a. *Reference to* Jagged Edge

The prosecutor began his closing argument by quoting the actor Jeff Bridges' character from the movie *Jagged Edge*: "So you think I killed my wife. Prove it." (App. at A1565.) The prosecutor noted that Bridges' character was in fact guilty of killing his wife but observed that "the way our system is set up, and rightly so, if someone is … charged with a crime, … [h]e has a right to say I'm not guilty and, Government, you have to prove it." (App. at A1566.) Costa argues on appeal that the reference to Bridges' character in *Jagged Edge* "cast a specter over the entire closing" by implying that "defendants are guilty as charged but that they sometimes force the government to 'prove it' in the charade of a trial." (Appellant's Opening Br. at 26). The government counters that the prosecutor made the reference to *Jagged Edge* simply "to illustrate several points about the criminal justice process." (Appellee's Br. at 43.)

Costa cites *United States v. Kincannon*, 567 F.3d 893 (7th Cir. 2009), in which the government, in its closing argument, made an analogy to the movie *The Godfather* to explain to the jury that it would try to tie together the events of the underlying crime

6

much like director Francis Ford Coppola did in various scenes depicting assassinations coordinated by the character Michael Corleone. *Id.* at 896. Costa focuses on the Seventh Circuit's observation in *dicta* that, had "the government compared [the defendant] to … Corleone, an organized crime kingpin responsible for murders and a whole host of other criminal activity[,] [s]uch an analogy would be utterly unmoored from the record … ." *Id.* at 900 (citation omitted).

Despite that comment, the *Kincannon* court held that the "reference to *The Godfather* [did] not approach impropriety" because the government used the movie to "explain[] to the jury that [it] would try to do orally what Coppola did in his film – that is, tie together the events that occurred … into one seamless story." *Id.* Similarly, the prosecutor's remarks in this case can be understood as not directly comparing Costa with Bridges' character in *Jagged Edge* but instead referencing the movie to exemplify Costa's right to claim his innocence and require the government to prove his guilt. The prosecutor emphasized to the jury that, despite Costa's admissions, it "still [had] to prove" Counts I, II, and III, and that it would explain "why [it] [had] shown … that [Costa] is in fact guilty of Count [IV] also." (App. at A1567.) Thus, while unnecessary, the reference to *Jagged Edge* was consistent with the government's burden of proof, and it was not plain error for the District Court to see it as less than misconduct.

### b. *Reference to Jury Bargaining*

Costa also argues that the prosecutor improperly accused Costa of trying to bargain with the jury. After summarizing the evidence against Costa, the prosecutor suggested that the reason Costa admitted his guilt on Counts I, II, and III at trial, but not

7

on Count IV, was because he was trying to "bargain" or "horse trade" with the jury – asking, in return for his concessions, that the jury find him not guilty of Count IV. (App. at A1585-86.) Costa also characterizes the prosecutor's attack on the defense as amounting to a statement that the defense was a "sham" aimed at "deceitfully bargaining directly with the jury." (Appellant's Opening Br. at 29.)

As already discussed, the government did not presuppose Costa's guilt or shift the burden of proof, even though Costa admitted his guilt to Counts I, II, and III. Furthermore, "attacking and exposing flaws in one's opponent's arguments is a major purpose of closing argument." *United States v. Rivas*, 493 F.3d 131, 139 (3d Cir. 2007); *cf. United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996) (holding that permitting a comment that "attempted to focus the jury's attention on holes in the defense's theory" was not plain error). While it is improper for counsel to "introduce information based on personal belief or knowledge," he "may state his views of what the evidence shows and the inferences and conclusions that the evidence supports … ." *Zehrbach*, 47 F.3d at 1265 n.11. In this case, the prosecutor's suggestion of the motive behind Costa's trial strategy was not so untoward as to warrant any conclusion that the District Court plainly erred in permitting it.[6]

_____

[6] Additionally, Costa argues that the prosecutor used his prior convictions improperly in closing arguments. The prosecutor asserted that "Costa knows about a bargain" because he was previously charged with five counts of felony Medicaid fraud in state court but pleaded to misdemeanors. (App. at A1585.) As the government recognizes, the District Court had ruled that the prior convictions were admissible for two limited purposes: impeaching Costa's character, pursuant to Federal Rule of Evidence 609, and showing Costa's motive to sell Renaissance, pursuant to Federal Rule of Evidence 404(b). It is arguable that Costa opened the door to a broader use of his prior

### c. Reference to the Prosecutors' Experience and Insight

Costa argues that the prosecutor vouched for his own experience in prosecuting powder cocaine traffickers and for his co-counsel's "insight and knowledge of this case." (App. at A1581.)

Vouching "threatens to 'convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant.'" *United States v. Berrios*, 676 F.3d 118, 133 (3d Cir. 2012) (quoting *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998)). Improper vouching may occur if a prosecutor makes "repeated comments aimed at establishing his own veracity and credibility as a representative of the government." *United States v. Smith*, 962 F.2d 923, 933 (9th Cir. 1992); *see also Lee,* 612 F.3d at 195 (holding that a prosecutor is not allowed to speak about his own personal experiences).

Costa promptly and successfully objected to the lead prosecutor's alleged vouching for his own experience in prosecuting other drug-related cases. Assuming that the prosecutor indeed engaged in improper vouching, however, "a new trial is not warranted because it is highly probable that the error did not contribute to [Costa's] conviction."[7] *Lee*, 612 F.3d at 195. The prosecutor did not continue the vouching after

---

convictions, but, even if the prosecutor's use of the prior convictions was improper, the passing comment about bargaining inflicted no prejudice that would warrant a new trial.

[7] Vouching is a non-constitutional error, *United States v. Dispoz-O-Plastics, Inc.*, 172 F.3d 275, 286 & n.10 (3d Cir. 1999), so the question of prejudice is whether it is "highly probable that the error did not contribute to the judgment," *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000).

9

the District Court sustained the objection.[8]  He immediately moved on, emphasizing that "the trial necessarily focuses on [Costa]" and observing that the crimes were not victimless.  (App. at A1605.)  Moreover, the District Court reminded the jury that "what is said in closing arguments is not evidence."  (App. at A1565).  Viewed in the context of the entire trial record, it is not highly probable that the prosecutor's vouching for himself weighed on the jury's decision, and, therefore, a new trial is not warranted.  *See Lee*, 612 F.3d at 195 (holding that, "even though the prosecutor did cross the line into improper vouching," a new trial was not necessary because, *inter alia*, "the prosecutor did not continue the vouching once an objection was raised and the District Court directed the prosecutor to move on").

Similarly, even if the lead prosecutor's passing reference to the knowledge and insight of his co-prosecutor was vouching, it was a passing comment and not so prejudicial as to warrant a new trial.

### B.      Resentencing

Costa argues in the alternative that we should remand for resentencing because (1) the District Court violated the Double Jeopardy Clause of the Fifth Amendment by failing to merge the four counts for sentencing purposes; (2) the Court abused its discretion by not conducting an analysis under 18 U.S.C. § 3584 "prior to running a

---

[8] Costa points out that the Court did not give a curative instruction, but he never requested one.  Costa also asserts, without explanation, that "[t]he final jury charge did not contain the correct standards concerning burden of proof, presumption of innocence, and use of Costa's prior convictions."  (Appellant's Br. at 34 (citing App. at A1696-98, A1706, A1708).)  We discern no error in the cited instructions.

portion of the sentences consecutively"; and (3) the government did not produce *Brady* material that "was directly contradictory to the position that the government took at sentencing." (Appellant's Opening Br. at 39-40.)

    1.    *Double Jeopardy Clause*[9]

Costa argues that, for purposes of sentencing, his convictions on Counts I, II, and III (unlawful distribution of oxycodone under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)) should have merged with his conviction on Count IV (unlawful maintenance of a premises for distribution of oxycodone under 21 U.S.C. § 856(a)(1)). If they had been merged, he would face a statutory maximum of 20 years imprisonment, *see* 21 U.S.C. §§ 841(b)(1)(C), 856(b), rather than the higher Guidelines range of 292 to 365 months that the District Court used as its starting point. Costa argues that Congress did not intend to treat § 841 and § 856 as separate offenses when based on the same underlying conduct. He also argues that, under the double jeopardy test provided by *Blockburger v. United States*, 284 U.S. 299 (1932), each offense does not require proof of a fact that the other does not.

The *Blockburger* test "is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett v. United States*, 471 U.S. 773, 779 (1985). Because "'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended[,]' …

___

[9] The Fifth Amendment to the Constitution provides in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb … ." U.S. Const. amend. V. Because Costa's double jeopardy argument addresses only a question of law, we review it de novo. *See United States v. Baird*, 63 F.3d 1213, 1215 (3d Cir. 1995).

11

a Double Jeopardy challenge must fail if the statutory text clearly reflects a legislative intent to impose multiple sentences on a defendant for a single underlying transaction." *Berrios,* 676 F.3d at 138 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)) (citing *Albernaz v. United States*, 450 U.S. 333, 344 & n.3 (1981)).  Other Circuit Courts that have examined whether Congress intended to punish § 841 and § 856 offenses separately have concluded that, in enacting § 856, "Congress unequivocally determined to create a distinct offense – with its own, separate punishment – aimed specifically at criminalizing the use of property for narcotics-related purposes."[10]  *United States v. Sturmoski*, 971 F.2d 452, 462 (10th Cir. 1992) (relying on the plain language and legislative history of the statute); *accord United States v. Church*, 970 F.2d 401, 407 (7th Cir. 1992) ("The

---

[10] Section 856 provides, in relevant part:

[I]t shall be unlawful to –
(1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance;
(2) manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

21 U.S.C. § 856(a).  On the other hand, 21 U.S.C. § 841 provides, in relevant part:

(a) Unlawful acts

[I]t shall be unlawful for any person knowingly or intentionally –
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance … .

21 U.S.C. § 841(a)(1).

12

plain language of the statute indicates that Congress intended to punish conspiracies to violate 841(a)(1) separately from conspiracies to violate 856(a)(1)."); *cf. United States v. Baker*, 16 F.3d 854, 858 (8th Cir. 1994) (concluding that a § 856 offense is distinct from a "controlled substance offense" under U.S.S.G. § 4B1.2). We agree with those decisions. Since it is clear that Congress intended to punish § 841 and § 856 offenses separately, Costa's sentences could have run consecutively, and the District Court did not err in using the Guidelines range of 292 to 365 months.

### 2. *Demand for Analysis Under 18 U.S.C. § 3584*[11]

Costa argues that the District Court abused its discretion by not explicitly conducting an analysis under 18 U.S.C. § 3584 before "running a portion of the sentences consecutively to reach the higher Guideline range." (Appellant's Opening Br. at 40.) The argument is without merit.

Under 18 U.S.C. § 3584, a sentencing court has discretion to impose multiple terms of imprisonment either concurrently or consecutively: "[A] court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3584(b). Costa seems to argue that the Court should have conducted a § 3584 analysis before applying the Guidelines range of 292 to 365 months to each of Counts I, II, and III. As the government correctly

_____

[11] Because Costa's claim pertains to the District Court's decision on whether his convictions should be addressed in concurrent or consecutive sentences, we review for abuse of discretion the Court's exercise of discretion without explicitly conducting an analysis under 18 U.S.C. § 3584. *United States v. Swann*, 275 F.3d 272, 275 (3d Cir. 2002).

points out, however, Costa conflates the court's obligation to determine the applicable Guidelines range for each count with the court's discretion to order the sentences on each count to run concurrently or consecutively. Section 3584 relates to the latter determination, in which the District Court imposed Costa's 20-year sentences for each count to run concurrently.[12]

Nonetheless, the District Court properly considered the § 3553(a) factors, as required by 18 U.S.C. § 3584(b), when determining the sentence for each of count. It found that the facts compelled "substantial additional punishment and incarceration" (App. at A1886) because Costa was, "by far, the largest distributor of [oxycodone] in Delaware at the time" (*id.* at A1884-85) and had a "pattern of manipulation and deception" (*id.* at A1887-88). The Court also took into account the sentences imposed on other defendants involved in the underlying oxycodone distribution and distinguished the rationales behind their sentences from the rationale behind Costa's sentence.

Therefore, the Court did not err in exercising its discretion under 18 U.S.C. § 3584.

### 3. Brady *Violation*[13]

Finally, Costa argues that the government withheld *Brady* material that was relevant to his sentencing. Specifically, he contends that, despite two written requests,

---

[12] Running the sentences concurrently, rather than consecutively, was obviously to Costa's benefit.

[13] A review of a *Brady* violation involves both questions of law and fact. *United States v. Pelullo*, 14 F.3d 881, 886 (3d Cir. 1994). We review questions of law de novo, and factual findings for clear error. *Id.*

the government failed to produce a search warrant affidavit and an inventory list resulting from that search, which would have supported his assertion that he had cooperated with the government by providing credible information about a gang member's plot to murder a prosecutor and a federal agent.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Materiality in this context requires a "reasonable probability" that, had the evidence been disclosed, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 684 (1985). At the sentencing hearing, the government confirmed that it had "relied on some of [Costa's] evidence" in seeking a search warrant, but that it did so because it felt, based on "the nature of the information, that it had to." (App. at A1830-31.) The District Court then "consider[ed] [his cooperation] in connection with whether there should be a variance … because the Government has accorded at least minimal credibility to at least some small portion of what [Costa] provided in his efforts to cooperate." (App. at A1841.) Accordingly, the information at issue, even if assumed to be covered by *Brady*, would have been cumulative of the evidence that the Court considered at sentencing regarding Costa's attempted cooperation with the government. Because it is not reasonably probable that the result of the sentencing would have been different, there was no *Brady* violation.

15

**III.    Conclusion**

For the foregoing reasons, we will affirm Costa's convictions and sentence.