BAUER, Circuit Judge,
dissenting.
I would remand this case for retrial. I believe that the district court committed reversible plain.error by admitting Res-nick’s refusal to submit to a polygraph examination into evidence and allowing the government to comment on this refusal during closing arguments. These actions *899 virtually exclude the possibility of Resnick receiving a fair trial.
Our standard of review — plain error — is a “high bar,” see United States v. Love, 706 F.3d 832, 841 (7th Cir.2013), but it should not be an impenetrable shield. Here, the introduction of the refusal to take the polygraph and the government’s subsequent comments constituted plain error which polluted the other evidence and compromised the entire trial. It had the effect of replacing the jury as factfinder and convicting Resnick by judicial fiat, not by the evidence presented. Because such actions prejudiced Resnick and seriously called into question the fairness, integrity, or public reputation of his trial, I would remand.
The district court’s errors were constitutional and evidentiary in nature. First, it was plain constitutional error to admit Agent Chicantek’s testimony that Resnick refused to take a polygraph and to allow comment on the refusal. This violated Resnick’s Fifth Amendment right against self-incrimination, on which our precedent is clear and obvious. See Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). The Self-Incrimination Clause of the Fifth Amendment states that “[n]o person ... shall be compelled in any criminal case to be a witness against himself.” See also United States v. Manjarrez, 258 F.3d 618, 623 (7th Cir.2001) (quoting Rock v. Arkansas, 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (“the defendant’s right to testify is a fundamental constitutional right ‘essential to due process of law in a fair adversary process’ ” (other citations omitted))). This Fifth Amendment right incorporates a right to consult an attorney before speaking to police as well as a right to remain silent when facing custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This right is absolute, not situational. See id. at 479, 86 S.Ct. 1602 (right against compelled testimony is absolute and “cannot be abridged”); Greene v. Finley, 749 F.2d 467, 472 (7th Cir.1984) (“the constitutional privilege against self-incrimination ... grant[s] ... an absolute right”). Further, the government is “prohibited] ... from ‘treating] a defendant’s exercise of his right to remain silent at trial as substantive evidence of guilt.’ ” United States v. Ochoa-Zarate, 540 F.3d 613, 617 (7th Cir.2008) (quoting United States v. Robinson, 485 U.S. 25, 34, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)).
If a defendant refuses to testify or invokes his Miranda rights, the prosecutor cannot comment on this refusal to the jury. Miranda, 384 U.S. at 468 n. 37, 86 S.Ct. 1602 (“[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation.”); United States v. Tucker, 714 F.3d 1006, 1015 (7th Cir.2013) (citing Griffin v. California, 380 U.S. 609, 612-13, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)) (“A prosecutor may not make comments, either directly or indirectly, that lead the jury to draw a negative inference from a defendant’s decision not to testify.” (Other citation omitted)). The government violates a defendant’s right against self-incrimination if “it manifestly intended to refer to her silence” when arguing to the jury. United States v. Phillips, 745 F.3d 829, 834 (7th Cir.2014) (quotation marks, citation, and brackets omitted).
Here, the government not only used Resnick’s refusal to take a polygraph examination as substantive evidence of consciousness of guilt, but also manifestly referred to this refusal when arguing to the jury. As the majority notes, a polygraph examination is a custodial interrogation. The specific inquiry which Chicantek propounded was whether Resnick wanted to *900 continue to answer questions about his activity with T.M. and K.M. A trained polygraph operator that the government selected would propose these questions. Resnick refused to submit to this test, as was his constitutional right, and added: first, that he would not considering taking a polygraph examination until he spoke with a lawyer; and second, that “whoever is operating the machine can manipulate it to say whatever they want to say or the results to be whatever they want them to be.” Resniek was later arrested, was appointed counsel, and continued to refuse to take a polygraph.
I see this as a clear and obvious example of someone refusing to testify against himself. Having exercised his right, the government absolutely could not (1) use his refusal as substantive evidence against him or (2) comment on the silence to the jury. See Griffin, 380 U.S. at 612-13, 85 S.Ct. 1229; Tucker, 714 F.3d at 1015; Ochoa-Zarate, 540 F.3d at 617. Yet the government did both, offering Chicantek’s testimony about Resnick’s refusal into evidence and arguing to the jury that the refusal evidenced guilt. After Chicantek disclosed the refusal to answer further questions, he also testified that Resnick did talk to a lawyer but still did not submit to a polygraph test. The implication is clear: even Resnick’s lawyer considered him a liar. All of this occurred without an admonition from the judge or apparently without a sense of law and fairness on the part of the prosecution.
After all of this, to add further prejudicial unfairness to the trial, the government argued to the jury that the refusal to take the polygraph demonstrated Resnick’s consciousness of guilt. The majority mentions this comment to the jury as “one reference,” but this reference was notable. The government stated, “Last but not least, I want to leave you with the defendant’s lies.” It then published a demonstrative exhibit listing Resnick’s answers to the April 27, 2011, interview questions. The government noted that in addition to various other denials, Resnick “refused to take a polygraph regarding his sexual abuse of [T.M.] and [K.M.].” The government continued: “And, yeah, he said, I should talk to a lawyer before I do that. Well, guess what, he talked to a lawyer. There was no polygraph.” The government argued that this refusal, coupled with other denials, evidenced Resniek’s consciousness of guilt regarding sexual abuse of T.M. and K.M.
Under Griffin, Miranda, and their respective progeny, a suspect like Resnick should feel empowered to refuse any interrogation, including interrogation via polygraph. Here, Resnick knew that he had this right, repeatedly and expressly refused to take the polygraph test, and yet had this refusal used against him. Compare Salinas v. Texas, — U.S. —, 133 S.Ct. 2174, 2179-80, 186 L.Ed.2d 376 (2013) (criminal defendant did not have Fifth Amendment protection because he did not expressly invoke his right to remain silent while under custodial interrogation). This contravenes the spirit of Griffin, Miranda, and all other pertinent Fifth Amendment jurisprudence from the last fifty years. The district court’s failure to recognize the government’s obvious violation of Resnick’s Fifth Amendment right constitutes plain error.
Compounding the district court’s plain constitutional error was its plain evidentia-ry error. Admitting a refusal to submit to a polygraph examination into evidence mistakenly assumes that polygraphs are reliable forms of evidence. This belies our precedent, which has consistently stated that polygraphs are not reliable forms of evidence. The majority ably describes the suspicion with which we and other circuits *901 regard polygraph evidence. Polygraphs have their use in employment settings, see, e.g., Veazey v. Commc’ns & Cable of Chicago, Inc., 194 F.3d 850, 854-58 (7th Cir.1999), but their unreliability makes their results extremely problematic when offered as evidence in a criminal trial. See United States v. Scheffer, 523 U.S. 303, 309-10, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (noting that the government has “a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial,” that “there is simply no consensus that polygraph evidence is reliable,” and that “the scientific community remains extremely polarized about the reliability of polygraph techniques”).
Yet, as the majority notes, polygraph tests still carry an “aura of infallibility” in the minds of many jurors. Id. at 314, 118 S.Ct. 1261. This may lead jurors to give inappropriate credence to polygraphs findings; they could trust the polygraph more than their own instincts and sensibilities. In instances where scientific research conflicts with public perception of scientific evidence, the court must be particularly vigilant in exercising its role as gatekeeper. See Fed.R.Evid. 702(c); Brown v. Burlington N. Santa Fe Ry. Co., 765 F.3d 765, 771-72 (7th Cir.2014); Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
The thrust of our jurisprudence on polygraphs establishes that they are unreliable tools for finding truth, and have limited value as criminal evidence. See United States v. Lea, 249 F.3d 632, 638 (7th Cir.2001) (quoting Scheffer, 523 U.S. at 309-10, 118 S.Ct. 1261) (“[T]he scientific community remains extremely polarized about the reliability of polygraph techniques.”). As the majority writes, our decisions regarding introduction of polygraph evidence have reflected this concern, as we have “in practice” only “affirm[ed] the exclusion of polygraph evidence.” We give wide discretion to district courts to disabuse jurors of the notion that polygraphs are valid evidence. We have never given discretion to admit a refusal to take a polygraph, because we have never deemed polygraphs inherently reliable.
The district court’s actions constitute plain error on either legal front: it violated Resnick’s right against self-incrimination and it inflicted unfair prejudice by admitting historically unreliable evidence. But the convergence of these two legal issues solidifies the plainness of the district court’s error. Even if not explicit, our jurisprudence on both issues is clear.
By admitting this evidence and allowing comment on it, the district "court misled the jury and inflicted prejudice on Res-nick. In the constitutional sense, the court violated a bedrock principle of our criminal justice system: courts cannot “imposed ... a penalty ... for exercising a constitutional privilege” or “cut[] down on the privilege by making its assertion costly.” Griffin, 380 U.S. at 614, 85 S.Ct. 1229. To do so would recall “the inquisitorial system of criminal justice, ... which the Fifth Amendment outlaws.” Id. (quotation marks and citation omitted). Indeed, the Griffin court understood the power of the court’s allowance of prosecutorial comment on a jury, and its words to that end are fitting: “What the jury may infer, given no help from the court, is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another.” Id.
Second, in the evidentiary sense, the jury will be further emboldened by the court’s tacit determination that a polygraph is both reliable and probative, and will be more likely to “abandon its duty to assess credibility and guilt.” Scheffer, 523 U.S. at 314, 118 S.Ct. 1261. “A fundamen *902 tal premise of our criminal justice system is that the jury is the lie detector.” Id. at 313, 118 S.Ct. 1261 (quotation marks and citations omitted). When a court admits a refusal to take a polygraph into evidence, it places its imprimatur on the reliability and relevance of polygraph findings. This impermissibly leads a jury into error.
Ultimately, the gravity of the district court’s error necessitates a new trial; it seriously calls into question the fairness, integrity, and public reputation of the judicial proceedings. See Olano, 507 U.S. at 732, 113 S.Ct. 1770. The government argues that even if it were plain error to admit the refusal evidence, it still presented “mounds of evidence” sufficient to convict Resnick, The majority agrees, calling the case against Resnick “airtight.” This implies that only an innocent defendant could have his conviction reversed under plain error review. More disturbingly, it implies that a court may ignore a criminal defendant’s clearly established rights if the evidence against him is strong enough.
This characterization is not a proper understanding of the fourth prong of Ola-no and thereby misinterprets plain error review. According to Olano, a “miscarriage of justice” that “seriously affects the fairness, integrity or public reputation of judicial proceedings” is not limited to cases where defendant is actually innocent. 507 U.S. at 736-37, 113 S.Ct. 1770. In fact, the Supreme Court noted in Olano that “we have never held that” remand for plain error “is only warranted in cases of actual innocence.” Id. This court has reaffirmed that a defendant need not “establish actual innocence” under Olano plain error review to trigger remand. United States v. Driver, 242 F.3d 767, 771 (7th Cir.2001). Resnick’s guilt is not at issue on appeal; we only review whether he received a fair trial.
The majority opinion enumerates all of the things wrong with the polygraph evidence and discussion about it, but concludes that this is not a proper case for a per se rule; I find it the perfect case for the use of such a rule. The crime charged is universally abhorred; the defendant is a wholly unsympathetic one. But if we are to accord all persons with their constitutional right to not be tried under rules that force them to testify against themselves, and to require the prosecutors and judges zealously ensure that criminal trials and evidence used in the trials are delivered fairly and completely constitutionally, this is the case to do so.
I admire the discussion of the problem by the majority; I disagree with the legal implication. The error was plain, damning, and cannot be overlooked. I would reverse for a new trial that would be conducted without any discussion of the refusal of Resnick to submit to a polygraph examination.